ALBERT M. KNIGHT, administrator, *vs.* JAMES S. CUNNINGHAM & another, executors.

Suffolk.    December 15, 1893. — March 1, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Estate of Deceased Person — Special Statute of Limitations — " Culpable Neglect " — Equity.*

Where the heirs of a deceased person, whose estate consists wholly of land and is amply solvent, to avoid the loss which would result from a forced sale thereof authorize the executor of his will to agree with a creditor of the estate that, if the latter will delay the enforcement of his demand, the executor will pay him as fast as the land can be advantageously sold, and this is assented to by the creditor and is also to his advantage, and payments on account of the debt are made to him in accordance with the agreement, after the time limited by Pub. Sts. c. 136, § 9, for the prosecution of claims against the estate, it is not " culpable neglect " on the part of the creditor to refrain from prosecuting his claim within the time so limited; and he may maintain a bill in equity under § 10 to recover the balance of his claim.

BILL IN EQUITY, filed June 6, 1892, under Pub. Sts. c. 136, § 10, by the administrator *de bonis non*, with the will annexed, of the estate of William Gray, junior, deceased, against James S. Cunningham and James D. Thomson as executors of the will of Catherine H. Cunningham, deceased.    Hearing. before *Morton*, J., who reported the case for the consideration of the full court, in substance as follows.

William Gray, junior, died in August, 1886, and on the 6th of September following one Edward Cunningham was appointed

administrator with the will annexed of his estate. There was found upon the books of Gray an account against Catherine H. Cunningham amounting to upwards of $13,000. Suit was brought by Edward Cunningham as administrator against Catherine H. Cunningham to recover that amount, and the writ was duly entered in the Superior Court on the first Monday of February, 1887. The defendant Thomson appeared for her in that suit. Subsequently, as attorney for her, he offered to consent to judgment for the plaintiff in that action for $10,000, provided no execution should issue thereon before June 1, 1887. This was agreed to by Edward Cunningham, and judgment was entered on February 17, 1887, a petition for leave to compromise having been in the mean time presented by him to the Probate Court and granted. Thomson represented to Edward Cunningham, that to pay the claim it would be necessary to sell land belonging to Catherine H. Cunningham; that a forced sale would result in a great sacrifice; that he needed until June 1 to bring the land to a market; that he would make payments on the judgment as fast as he sold the land; and that he thought it would all be paid by June 1. Induced by these representations and agreements, Edward Cunningham consented to the delay.

On or about June 1, Thomson wrote to Cunningham as follows: " It is right to inform you that Mrs. C. is unable to pay any part of yr judgment, which I was confident would by this time have been at least very much reduced. If you wish a mortgage of three acres of land for one year at 5 per cent it will be given. Of course it is open to you to proceed with your judgment, and that you may act your pleasure therein I will say that, although this will embarrass me, it cannot now wreck the estate. I will adjust myself to that emergency when it arises."

Thomson, however, testified that he had reason to believe that Cunningham would do nothing. Cunningham took this letter to his counsel, Mr. Richard Stone, who saw Thomson, who told him that he had been trying to sell the land and had failed, and expressed the desire that Cunningham should refrain from levying the execution, and he would endeavor to realize on the land as fast as possible, and pay on the execution. Thomson

further urged upon him that the money was not needed for the distribution of Gray's estate, and that the judgment would carry six per cent interest. In consequence of these representations it was agreed that the execution should not be levied, and that the money should not be called for until needed for distribution by the administrator of Gray's estate; and that in the mean time Thomson should sell the land as fast as possible and pay on the judgment. Mr. Stone saw Thomson occasionally after this, and this arrangement continued.

In May, 1888, Thomson made a payment to Cunningham, on account of the judgment, of $2,000. Catherine H. Cunningham died in June, 1888, and on July 23 the defendants were appointed executors of her will, which was duly proved. On June 28 the heirs and devisees of Catherine H. Cunningham signed a paper requesting and authorizing Thomson to keep the real estate in his charge and manage it as a joint estate for four years, as he had been doing for the past eighteen months for the testatrix, and agreeing to sign no instrument affecting the land without communicating with him beforehand. Afterwards Thomson saw Mr. Stone and told him these facts, and also told him that the heirs and devisees had put the entire management of the estate into his hands for four years, and he had full authority to manage the estate as before the death of the testatrix, and he desired that no proceedings should be taken on the execution, and he would pay from the proceeds of the land. Substantially the same thing was said a number of times after by Thomson to Mr. Stone, and, in consequence of the representations and statements thus made, nothing was done to collect the judgment, or to cause a levy of the execution on the land.

On November 22, 1889, Edward Cunningham died, and on January 2, 1890, the present plaintiff was appointed administrator *de bonis non* of Gray's estate. In June of that year Thomson paid to the plaintiff $1,000 on account of the judgment, and in September of the same year he made another payment of $1,000.

Nothing more was done until September 23, 1891, when the plaintiff requested of Thomson a settlement of the balance due, the estate of Gray having reached a point where it was necessary that the amount should be paid for the purpose of distribution.

On the same day Thomson replied to the request as follows: "The executors can pay you nothing, you must look to the heirs."

Several months elapsed, during which the plaintiff endeavored to procure a settlement from the heirs, but without success. There was no unreasonable delay in bringing this bill after the plaintiff received notice that the executors of Catherine H. Cunningham could not pay the balance due. The property of Catherine H. Cunningham consisted of real estate, and was worth at the time of her death more than $100,000 above all claims and encumbrances upon it, and above all her liabilities. The defendant James S. Cunningham was one of the heirs and devisees of Catherine H. Cunningham. He did not object to the agreement made by his co-executor Thomson. The defendants have not filed any account in the Probate Court as executors, and the estate of Catherine H. Cunningham is still unsettled.

The plaintiff was employed by Edward Cunningham in April, 1887, to assist him in administering on the estate of Gray, and he continued in that employ until Edward Cunningham's death. He knew of the representations made to Edward Cunningham and to his counsel by Thomson, and of the agreement of Edward Cunningham in relation to proceedings to enforce the judgment. After his appointment as administrator, he refrained, in consequence of his knowledge of that agreement, from taking any steps to collect the judgment until the money was needed for distribution. A forced sale of the land upon execution would have resulted in a great sacrifice, and the delay in enforcing the plaintiff's claim has been advantageous to Catherine H. Cunningham's estate.

If, upon the above facts, the plaintiff was entitled to recover, judgment was to be entered in his favor for $7959.31, and interest from September 8, 1890, with costs; otherwise, the bill was to be dismissed, with costs.

*J. D. Thomson,* for the defendants.

*R. Stone,* for the plaintiff.

MORTON, J. This is a bill in equity, under Pub. Sts. c. 136, § 10. This statute and those of which it is a re-enactment have been before this court in a number of cases. An examina-

tion of them shows, we think, that this case is distinguishable from those relied on by the defendants, which are *Waltham Bank* v. *Wright*, 8 Allen, 121, *Jenney* v. *Wilcox*, 9 Allen, 245, *Bradford* v. *Forbes*, 9 Allen, 365, and *Wells* v. *Child*, 12 Allen, 333, and comes nearer to *Morey* v. *American Loan & Trust Co.* 149 Mass. 253, where the bill was sustained and relief granted. In *Bradford* v. *Forbes*, *ubi supra*, the creditors were not before the court, and though it was said that, if they had been, no ground for relief was shown, the question did not come before the court for its decision.    But in that case, as in *Waltham Bank* v. *Wright*, and *Wells* v. *Child*, *ubi supra*, the creditors relied wholly upon the promises and representations of the executors and administrators, which they were bound to know, as matter of law, the administrators and executors had no authority to make so as to bind the estates represented by them, and to which, therefore, it was culpable neglect on their part to trust.    In *Jenney* v. *Wilcox*, *ubi supra*, the ground relied on was that the creditors were ignorant of the statute limiting suits against executors and administrators.    In the present case the estate consisted of land, and a forced sale of it would have resulted in a great sacrifice, and the delay has been advantageous to the estate.    The promises and representations of the executors were made by them, not only in their representative capacity, but also as agents for the heirs at law.    They have made payments in accordance with their agreement at different times, the last being after the statute had run.    It does not appear that there is any other creditor than the estate of which the plaintiff is administrator. The delay was agreed to by all parties interested, and has been to their mutual advantage.    The object of the statute limiting actions against executors and administrators is to secure the speedy settlement of estates, so that they may descend to and be distributed among those who are entitled to them free from all claims and liens on the part of creditors.    *Brown* v. *Anderson*, 13 Mass. 201.    *Dawes* v. *Shed*, 15 Mass. 6.    *Emerson* v. *Thompson*, 16 Mass. 429.    *Lamson* v. *Schutt*, 4 Allen, 359.    And if, in a case where the estate is wholly of land and is amply solvent, the heirs, to avoid the loss which would result from a forced sale, authorize the executors to agree with the creditor or creditors that, if they will delay the enforcement of their demands, the

executors will pay them as fast as the land can be advantageously sold, and this is assented to by the creditors, and is also to their advantage, we think that, all persons interested being included in and parties to the arrangement, it is not culpable neglect on the part of a creditor to suffer, under such circumstances, the time to expire within which an action may be brought against executors, and that such a case does not come fairly within any of those cases on which the defendants rely, and that justice and equity require that the creditor should have judgment against the estate for the amount of his claim.

*Judgment for the plaintiff for $7,959.31, and interest from September 8, 1890, and costs.*