BOYD EWING, receiver, vs. LIZZIE P. KING, administratrix.

Suffolk.   December 7, 1896. — September 8, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Authority of Receiver of Foreign Corporation to Sue — Special Statute of
Limitations — " Culpable Neglect."*

Where the question of the right of a receiver of a foreign corporation to sue was
not raised upon the demurrer or presented in argument, the court said that
from the statements that the notes and account on which the claim was founded
were " among the assets which came into the hands and ownership of the plain-
tiff as such receiver," and that he prevailed in all stages of a suit on the same
claim against the defendant's intestate in the United States courts, the defend-
ant's intestate having had personal service, having appeared by counsel, and
having sworn to the answer personally, and the plaintiff having had no notice
of the death of the defendant's intestate until after the final decree was entered,
it might fairly be inferred that as receiver he became assignee of the assets.

Where a bill in equity was brought under Pub. Sts. c. 136, § 10, against an admin-
istrator more than two years after his giving bond on a claim founded on notes
and an account, the court said that it was not important to determine whether
a suit on the same claim brought in the United States courts, the defendant's
intestate having had personal service, having appeared by counsel, and having
sworn to the answer personally, and the plaintiff having had no notice of the
death of the defendant's intestate, until after the final decree was entered, was
void or merely voidable, since the bill told in general language the whole story
of the plaintiff's claim and asked for payment of it, without reference to the
question whether it was legally presented by the notes and account, or by a
judgment in which they were merged.

If the averments of a bill in equity brought under Pub. Sts. c. 136, § 10, by a re-
ceiver of a foreign corporation against an administrator, are true, — that the
plaintiff was not a creditor who waited quietly and carelessly for more than two
years after the death of his debtor in this Commonwealth when he had no other
plan for the recovery of his debt than to seek the debtor at his domicil; that by
service of process upon his debtor he had brought him within the jurisdiction
of the Federal Court in his own district and was pursuing him there; that the
debtor had appeared in court by counsel, and had made an answer which he
had sworn to in person; that the plaintiff had prevailed in the Federal Courts,
including the Supreme Court of the United States on appeal; that no sugges-
tion had come from any source that the defence, which was all the time being
conducted in the name of the defendant's intestate and others, was not in fact
conducted by him as well as by his co-defendants, and the defendant at the time
of his appointment as administrator was cognizant of the proceedings in court,
and from that time until the entry of judgment employed counsel to represent
the interests of the estate of his intestate in the litigation, — the claim may be
prosecuted as it would have been if the plaintiff had learned of the death of his
debtor, and had brought suit against the administrator within two years after
his appointment.

BILL IN EQUITY, filed in this court October 14, 1895. The
bill alleged that the plaintiff, a resident of Chattanooga, Ten-
nessee, was in the year 1891 appointed by the United States
Circuit Court for the Eastern District of Tennessee, receiver of
the Cardiff Coal and Iron Company, a corporation duly organ-
ized under the laws of Tennessee; that he was duly qualified
as such receiver, and had ever since held that office; that
among the assets which came into the hands and ownership of
the plaintiff as such receiver was a book account for $1,000,
and two notes, each for $4,275, dated April 24, 1890, both
signed by Stillman B. King as trustee, and both payable to the
order of the Cardiff Coal and Iron Company; that upon the
second of these notes partial payments of principal, amounting
to $3,100, were made during the year 1890, leaving $1,175 due
upon principal; that each note stated that it was " given in part
consideration for land this day bought of the said Cardiff Coal
and Iron Company, and a lien is retained on said land to secure
the payment of this note "; that King, as the plaintiff was in-
formed and believed, and therefore averred, in making the notes
and in purchasing the land for which they were given, was acting
as trustee or agent for certain persons, but for what persons the
plaintiff was not informed; and that, by making and delivering
the notes in the manner and form in which they were made, he
became personally liable for the payment thereof; that on or
about August 1, 1891, the plaintiff brought suit in the United
States Circuit Court for the Eastern District of Tennessee against
King to enforce the payment of the notes ; that personal service
of process was duly made upon him within the district and juris-
diction of said court, and he appeared by counsel, and filed an
answer which was sworn to by himself personally ; that the suit
was also brought against a large number of other persons, who
had bought land of the company, and given their notes in pay-
ment of the same ; that it was contested by King and the other
defendants, not only in the United States Circuit Court for the
Eastern District of Tennessee, but also in the United States
Circuit Court of Appeals and in the United States Supreme
Court; that at all stages of the suit the plaintiff prevailed
against King and the other defendants, and finally, on Sep-
tember 3, 1895, obtained a final decree against him for the sum

of $9,488.10 debt, and the costs; that at no stage of the suit was the death of King suggested by his attorneys, or by the present defendant, or by any one else, and it was not until after the decree was entered that the plaintiff ascertained that King had died some time in the fall of the year 1892; that on December 15, 1892, the defendant was appointed by the Probate Court for the County of Suffolk administratrix of his estate, and thereafter gave due notice of her appointment by publication, and on March 2, 1893, filed in the Probate Court an affidavit setting forth such notice; that the petitioner was informed and believed, and therefore averred, that the defendant, at the time of her appointment as administratrix as aforesaid, was cognizant of the proceedings in the Circuit Court for the Eastern District of Tennessee between the plaintiff in this suit as plaintiff and the said Stillman B. King and others as defendants; and that she had from that time forward, until the decree was entered in said suit in Tennessee, employed and continued to employ counsel to represent the interests of the estate of Stillman B. King in said litigation in Tennessee; that substantially all the estate left by King was situated in Massachusetts, which, according to the inventory filed on March 2, 1895, showed realty to the amount of $10,550, and personalty to the amount of $12,955.90; that no account had been filed in the Probate Court by the defendant; that King left no estate in Tennessee except the lots of land purchased of the Cardiff Coal and Iron Company, which had been sold under an order of court, and the proceeds applied in part payment of the notes; that the two years allowed by Pub. Sts. c. 136, § 9, for bringing suits against the defendant as administratrix expired before he had any notice or knowledge of the death of King; that the defendant, by omitting to suggest the death of King, although she was cognizant of said suit, was guilty of a fraudulent concealment of the same; that the plaintiff was not chargeable with culpable neglect in not prosecuting his claim by a suit in Massachusetts within the next two years, and justice and equity required that he should now have judgment for the amount of his claim against the estate of King; and that this proceeding had been begun and was prosecuted by the plaintiff, not only for general creditors, but for the benefit of persons who, upon the security

of the notes mentioned in the bill, in good faith and before maturity thereof, advanced to the Cardiff Coal and Iron Company sums of money fully equal to the amount of the notes; and that after crediting all partial payments and proceeds of land sold, as stated in the bill, there still remained due to the pledgees or their representatives a sum equal to the amount sought to be collected from the defendant.

The prayer was that judgment might be rendered for the plaintiff for the amount of his said claim against the estate of King.

The defendant demurred to the bill, assigning as grounds therefor, want of equity, that the plaintiff had not stated a good and valid claim against the defendant, and that the cause of action was barred by the statute of limitations, and no sufficient cause was stated in the bill to take the case out of the statute. The Supreme Judicial Court sustained the demurrer; · and the plaintiff appealed to the full court.

The case was argued at the bar in December, 1896, and afterwards was submitted on briefs to all the justices.

*H. R. Bailey*, (*J. H. Morison* with him,) for the plaintiff.

*F. S. Hesseltine*, for the defendant.

KNOWLTON, J. This bill is brought by the receiver of a Tennessee corporation. It fails to show whether the nature of the receivership is such as to give him a title to the notes and account on which his claim is founded, and to enable him to sue upon them in his own name. See *Amy* v. *Manning*, 149 Mass. 487; *Wilson* v. *Welch*, 157 Mass. 77; *Buswell* v. *Order of the Iron Hall*, 161 Mass. 224; *Fort Payne Coal & Iron Co.* v. *Webster*, 163 Mass. 134; *Booth* v. *Clark*, 17 How. 322; *Yeager* v. *Wallace*, 44 Penn. St. 294. From the statement that the notes and account were " among the assets which came into the hands and ownership of the plaintiff as such receiver," and the further statement that he prevailed at all stages of the suit in the United States Circuit Court, in the United States Circuit Court of Appeals, and in the Supreme Court of the United States, it may fairly be inferred that as receiver he became assignee of the assets. But the question in regard to his right to sue was not raised upon the demurrer, nor presented in argument. It is therefore unnecessary to consider it further.

Both parties contend that the judgment obtained in the

United States Circuit Court in Tennessee was either voidable or void. If the judgment is treated as a nullity, the bill sets forth with sufficient fulness a claim upon the notes. The judgment is not set out particularly, and it does not appear whether or not it was merely an affirmation of a decision rendered before the decease of the defendant's intestate. See *Reid* v. *Holmes*, 127 Mass. 326, and cases cited. If it was entered under such circumstances and in such form as to be valid, or merely voidable and not void, there is a sufficient statement of it in the bill to enable the plaintiff to proceed, inasmuch as no objection is taken to the form of the allegation. In the present aspect of the case it is not important to determine whether it is void, or merely voidable, since the bill tells in general language the whole story of the plaintiff's claim, and asks for payment of it, without reference to the question whether it is legally represented by the notes and account, or by a judgment in which they are merged. Under Pub. Sts. c. 136, § 10, the remedy is in equity, as well on a claim under such a judgment as on a claim under the notes and account.

We come now to the question whether the plaintiff can have relief under Pub. Sts. c. 136, § 10, which is as follows: "If the Supreme Judicial Court upon a bill in equity filed by a creditor whose claim has not been prosecuted within the time limited by the preceding section, is of opinion that justice and equity require it, and that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited, it may give him judgment for the amount of his claim against the estate of the deceased person ; but such judgment shall not affect any payment or distribution made before the filing of such bill." Upon the facts stated in the bill there is no doubt that the plaintiff would have been entitled to recover at common law if suit had been brought upon his claim within two years after the appointment of the defendant as administratrix. The suit is founded upon contracts which it was the legal duty of the defendant's intestate to perform. If the contracts were advantageous to the corporation which the plaintiff represents, it was entitled to the benefit of them, and nothing appears that makes them less enforceable in equity than at law. The simple question is whether the statute above quoted was

intended to relieve a plaintiff who has lost his right to proceed at common law under such circumstances as appear in this case.

The statute has repeatedly been considered by this court. *Waltham Bank* v. *Wright*, 8 Allen, 121. *Jenney* v. *Wilcox*, 9 Allen, 245. *Bradford* v. *Forbes*, 9 Allen, 365. *Prentice* v. *Dehon*, 10 Allen, 353. *Wells* v. *Child*, 12 Allen, 333. *Richards* v. *Child*, 98 Mass. 284. *Ball* v. *Wyeth*, 99 Mass. 338. *Allen* v. *Ashley School Fund*, 102 Mass. 262. *Sykes* v. *Meacham*, 103 Mass. 285. *Spelman* v. *Talbot*, 123 Mass. 489. *Brooks* v. *Rayner*, 127 Mass. 268. *Morey* v. *American Loan & Trust Co.* 149 Mass. 253. *Knight* v. *Cunningham*, 160 Mass. 580. Without reviewing these cases, we are of opinion that there is no adjudication in any of them that would require a decision in favor of the defendant if applied to the facts of the present case. The statute is remedial, and it expressly provides that a judgment under it in favor of a plaintiff shall not affect any payment or distribution from the estate of the deceased person made before the filing of the bill. Its operation is not limited to cases where the failure to sue seasonably was due to such fraud, accident, or mistake as would be a ground for equitable relief if there were no statute. In each of the two cases last cited, relief was given under it when the circumstances were certainly not more favorable to the plaintiff than they are in the present case.

If the averments of the bill are true, the present plaintiff was not a creditor who waited quietly and carelessly for more than two years after the death of his debtor in another State when all the time he had no other plan or purpose for the recovery of his debt than to seek the debtor at his domicil. By the service of process upon the debtor he had brought him within the jurisdiction of the Federal Court in Tennessee, and was pursuing him there. The debtor had appeared in court by counsel, and had made an answer which he had sworn to in person. The plaintiff prevailed before the Circuit Court, the Circuit Court of Appeals, and finally before the Supreme Court of the United States. No suggestion had come from any source that the defence, which was all the time being conducted in the name of the defendant's intestate and others, was not in fact conducted by him as well as by his co-defendants. The defendant, at the time of her appointment as administratrix, was cognizant of the proceedings

in court, and from that time until the entry of the judgment employed counsel to represent the interests of the estate of her intestate in the litigation.   It seems clear that the plaintiff was not guilty of culpable neglect in assuming that his debtor was living so long as the defence was conducted and appeals were taken in his name.   The proceedings which were being conducted with the defendant's knowledge and consent, apparently in behalf of the defendant's intestate, were almost equivalent to repeated assertions by the intestate or his legal representatives that he was still living.   The plaintiff supposed that he was alive until after the decision of the Supreme Court of the United States, more than two years after the appointment of the defendant as administratrix.

In our opinion the statute was enacted to furnish a remedy in cases like this, and we discover no injustice to anybody in allowing the claim to be prosecuted as it would have been if the plaintiff had learned of the death of his debtor, and had brought suit against the administratrix within two years after her appointment.                    *Demurrer overruled.*