**AGWAY, INC.**

**v.**

**Elsie A. LUCE, Administratrix of the Estate of Roland H. Luce and Kendall R. Luce.**

Supreme Judicial Court of Maine.

March 19, 1976.

Perkins & Townsend by Warren C. Shay, Clinton B. Townsend, Skowhegan, for plaintiff.

Eames & Sterns by Richard S. Sterns, Donald E. Eames, Skowhegan, Morton A. Brody, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

In Maine, by statute (18 M.R.S.A. § 2402), no claim may be maintained against an executor or administrator of an estate unless the claim is "presented to the executor or administrator in writing or filed in the registry of probate" within six months

of the qualification of the executor or administrator.[1]

18 M.R.S.A. § 2656 modifies the absolute bar provision of 18 M.R.S.A. § 2402 as follows:

"If the Superior Court, upon a complaint filed by a creditor whose claim has not been prosecuted within the time limited by sections 2402, 2406 and 2651 to 2655, is of the opinion that justice and equity require it, and that such creditor is not chargeable with culpable neglect in not prosecuting his claim within the time so limited, it may give him judgment for the amount of his claim against the estate of the deceased person; but such judgment shall not affect any payment or distribution made before the filing of such complaint."

The issue now before us on this appeal from the granting of a motion for summary judgment in favor of plaintiff is whether or not the record demonstrates the plaintiff creditor "is not chargeable with culpable neglect in not prosecuting his [its] claim within the time so limited."

We deny the appeal.

The factual framework in which this appeal arises is not in dispute.

Roland H. Luce died on October 12, 1972. At the time of his death, Luce was indebted to Agway, Inc. in the amount of $10,248.11. A portion of this indebtedness was represented by claims on open account, while the remainder was represented by a note co-signed by Roland Luce and his son, Kendall Luce.

On October 19, 1972, Kendall Luce was appointed special administrator of his father's estate. He served in that capacity until the appointment of his mother as administratrix on November 13, 1972.

During the winter and spring of 1972–73 a representative of the plaintiff made inquiries of Kendall Luce concerning the outstanding debt. Each time, the representative was informed that there were many bills pending against the estate and that the debts would be paid as soon as a buyer could be found for certain farm property which had been owned by the decedent. It appears that none of these inquiries occurred while Luce was serving as special administrator.

On August 29, 1973 (over three months past the statutory filing deadline), Agway, Inc. filed a proof of claim against the Estate of Roland Luce in Somerset County Probate Court. On October 4, 1973, Agway commenced the action which resulted in this appeal.[2]

The presiding Justice in the Supreme Court of Probate applied his interpretation of 18 M.R.S.A. § 2656 to the facts then before him and concluded:

"There can be no question but that justice and equity require that the Plaintiff have judgment against the estate. However the statute requires an additional finding, 'that such creditor is not chargeable with culpable neglect.' The Court is of the view that the statute imposes the burden on the Plaintiff of showing excusable neglect, i. e., that its inaction was not blameworthy or that it was not unreasonable to delay under the circumstances. In this instance the Plaintiff's inaction was induced by one in a position to know the circumstances and the Court finds the Plaintiff's neglect to be excusable, i. e., not culpable."

That conclusion must be upheld if it is supported by credible evidence. *Sullivan v. Indian Head National Bank*, 99 N. H. 262, 108 A.2d 553 (1954); *State v. Coburn*, 133 Ohio St. 192, 12 N.E.2d 471 (1938).

There must be evidence to support a finding both that justice and equity require

1. *O'Grady v. Partridge*, Me., 319 A.2d 115 (1974).

2. Since Kendall Luce was a co-signatory of the promissory note, he was joined as a codefendant. He has not joined in this appeal.

the extension and that the claimant was not guilty of culpable neglect. *Holway v. Ames,* 100 Me. 208, 60 A. 897 (1905); *Bennett v. Bennett,* 93 Me. 241, 44 A. 894 (1899).

■ We have no difficulty in agreeing with the presiding Justice that justice and equity require leave for a late filing of the claim. We reach this conclusion because it is clear there was reliance on assurances made by Kendall Luce, who we are satisfied was, in the words of the Justice below, "one who was in a position to know the circumstances."

■ It is the finding of the Justice below that Agway was not guilty of "culpable neglect" that is under attack in this appeal.

The words "culpable neglect" as used in 18 M.R.S.A. § 2656 appear to have been first construed by this Court in *Bennett v. Bennett,* 93 Me. 241, 44 A. 894 (1899). In that case the Court quoted from an earlier Massachusetts case and described "culpable neglect" in these words:

"not criminal neglect, but any neglect that was 'censurable,' 'blameworthy;' 'the neglect which exists when the loss can fairly be ascribed to his (the plaintiff's) own carelessness, improvidence, or folly;' 'failure to make reasonable inquiry.'" 93 Me. at 243, 44 A. at 895.

Later, in *Holway v. Ames,* 100 Me. 208, 60 A. 897 (1905) "culpable neglect" was described as follows:

"It is less than gross carelessness, but more than the failure to use ordinary care, it is a culpable want of watchfulness and diligence, the unreasonable inattention and inactivity of 'creditors who slumber on their rights.'" 100 Me. at 211, 60 A. at 898.

In both these cases the Court cited a line of early Massachusetts cases construing

the Massachusetts statute from which the Maine statute was derived.[3] The Maine Court posited that at the time the Maine statute was adopted, the Maine Legislature must have had in mind the interpretation which the Massachusetts courts had given their statute. Included in the Massachusetts cases cited with approval were (1) *Waltham Bank v. Wright,* 8 Allen 121 (1864) where the creditor was found culpably negligent when he postponed enforcement of his claim on the oral promise of the executor that the debt would be paid out of a particular fund; (2) *Jenney v. Wilcox,* 9 Allen 245 (1864) where it was held to be culpable neglect for a creditor to delay the filing of his claim at the request of the executor who had assured him that the debt would be honored as soon as he could realize from certain property; and (3) *Wells v. Child,* 12 Allen 333 (1866) where reliance on the assurances of the executors that payment of a debt would be forthcoming as soon as certain real estate could be sold and that no further proceedings were necessary as the part of the out-of-state creditor was deemed to constitute culpable neglect.

The factual situation in *Bennett* did not involve, however, a delay in filing attributable to the urgings and assurances of an executor or administrator. In fact, the decedent's administrator had all the while urged a speedy settlement of accounts. The seven-year delay was found to be entirely the result of the claimant's own "inattention, want of diligence, and lack of proper effort." In those circumstances the Court had no difficulty in concluding that the creditor had been guilty of "culpable neglect."

In *Holway v. Ames,* 100 Me. 208, 60 A. 897 (1905), emphasizing that the plaintiff had all the information he needed to prosecute his claim within the statutory time limit and that he was in no way misled by the debtor's administrators, the court found

---

3. The Maine statute, first enacted in Maine in 1883, is almost a verbatim copy of the Massachusetts statute enacted in 1861.

that he was chargeable with "culpable neglect" and thus was not entitled to benefit from the extension statute.

In *Beale v. Swasey*, 106 Me. 35, 75 A. 134 (1909), the court once again cited with approval the early Massachusetts cases dealing with creditor reliance on the promises of executors and administrators. Cautioning that relief under the extension statute is grantable "only in those cases that are unmistakably shown to be within the express provisions of the remedial statute strictly construed," the court held the delinquent creditor culpably negligent, despite the fact that she had entrusted prosecution of her claim to her attorney and it was he who had failed to file a timely claim.

Finally, in *Harmon v. Fagan*, 130 Me. 171, 154 A. 267 (1931), this Court reaffirmed the principles enunciated in the earlier cases and held that "culpable neglect" had been demonstrated where the creditor made no effort to present her claim against an estate within the prescribed time period, despite the fact she had been apprised of the necessity of so doing.

Thus, it is apparent that although we have in the past expressed adherence to the early Massachusetts cases which have

dealt with the question, this Court has never passed upon the precise issue presented in this appeal; that is, whether a creditor can be found to be free of "culpable neglect" when his delinquent filing is attributable to the assurances of "one who was in a position to know the circumstances." [4]

Moreover, Massachusetts has not always taken a strict approach to its extention statute.[5]

In *Knight v. Cunningham*, 160 Mass. 580, 36 N.E. 466 (1894), the Massachusetts court distinguished its earlier decisions and found no "culpable neglect" where the creditor delayed filing of a claim pursuant to an agreement with the executors. The court recited a number of factors which influenced its conclusion[6] but it is not clear which of them provides the critical distinction from the earlier cases.

Later, in *Ewing v. King*, 169 Mass. 97, 47 N.E. 597 (1897), the court again found an absence of "culpable neglect" where a creditor's late filing was attributable to his reasonable belief that the debtor was still living. The creditor had been pursuing his rights against the debtor in another jurisdiction and was not notified of the debtor's demise until after the Massachusetts stat-

---

4. Kendall Luce was intestate's son and, as earlier pointed out, had been special administrator of the estate.

5. See generally, *1 G. Newhall, Settlement of Estates and Fiduciary Law in Massachusetts*, 192 (4th Ed. 1958); Annot., 71 A.L.R. 940 (1931).

6. "In the present case the estate consisted of land, and a forced sale of it would have resulted in a great sacrifice, and the delay has been advantageous to the estate. The promises and representations of the executors were made by them, not only in their representative capacity, but also as agents for the heirs as law. They have made payments in accordance with their agreement at different times, the last being after the statute had run. It does not appear that there is any other creditor than the estate of which the plaintiff is administrator. The delay was agreed to by all parties interested, and has been to their mutual advantage. The object of the statute limiting actions against executors and administrators is to secure the speedy

settlement of estates, so that they may descend to and be distributed among those who are entitled to them, free from all claims and liens on the part of creditors. [citations omitted] And if, in a case where the estate is wholly of land and is amply solvent, the heirs, to avoid the loss which would result from a forced sale, authorize the executors to agree with the creditor or creditors that, if they will delay the enforcement of their demands, the executors will pay them as fast as the land can be advantageously sold, and this is assented to by the creditors, and is also to their advantage, we think that, all persons interested being included in and parties to, the arrangement, it is not culpable neglect on the part of a creditor to suffer, under such circumstances, the time to expire within which an action may be brought against executors, and that such a case does not come fairly within any of those cases on which the defendants rely, and that justice and equity require that the creditor should have judgment against the estate for the amount of his claim." 160 Mass. at 584-585, 36 N.E. at 467-468.

ute had run against him. Stating that operation of the extension statute is ". . . not limited to cases where the failure to sue seasonably was due to such fraud, accident, or mistake as would be ground for equitable relief if there were no statute," the *Ewing* court determined that the creditor should be afforded a remedy even though it was not established that the fact of the debtor's death had been fraudulently concealed.

And in *McMahon v. Miller,* 192 Mass. 241, 78 N.E. 457 (1906), a creditor was granted equitable relief where his forbearance from asserting his claim was due to an oral understanding with one of the debtor's executors. The parties mistakenly believed that if the creditor were to file his claim, sale of certain of the decedent's real estate would be forced. Since it was apparent that the proceeds of a forced sale would be inadequate to pay off the outstanding debt, the creditor agreed to delay action until a regular sale of the property could be effected. Such sale actually took place within the time limit for presentment of claims, but the creditor was not made aware of that fact until after the limit had expired. In those circumstances, the court found the creditor entitled to relief though, as in *Ewing,* there was no evidence that any fraud had been practiced upon him.

New Hampshire, which has an extension statute[7] nearly identical to that of Maine and Massachusetts, seems to have adopted the more narrow interpretation of the term "culpable neglect" enunciated by the Massachusetts court in *Knight, Ewing,* and *McMahon.*

In *Powers v. Holt,* 62 N.H. 625 (1883), the court upheld the finding of the trial court that forbearance from presentment of a claim at the request of the debtor's executor did not constitute "culpable neglect."

In *Mitchell v. Smith's Estate,* 90 N.H. 36, 4 A.2d 355 (1939), a creditor delayed in bringing action against an estate on the mistaken belief that his claim was fully secured by a mortgage. Finding that the delay was attributable to the assurances of the borrower's son, the court held that the creditor had not been guilty of "culpable neglect." In the court's words:

> "[A] meritorious claim may be allowed against the unsettled part of an estate if the delay is not due to the claimant's fault and has not unduly affected the estate's defence against the claim." 90 N. H. at 40, 4 A.2d at 359.

And in *Lisbon Savings Bank & Trust Co. v. Moulton's Estate,* 91 N.H. 477, 22 A.2d 331 (1941), it was held that the creditor had stated a just reason for the late presentment of his claim against an estate where he charged that the delay was induced by the administrator's assurances that payment would be forthcoming without prosecution of the claim.

Ohio seems to be the only other state which has an extension statute [8] employing the "culpable neglect" language.[9] In the few instances in which the Ohio court has dealt with the statute, it has interpreted the language very narrowly so as to preserve the rights of creditors where the delay in the presentment of their claims is not attributable to their own inaction.

In *State v. Coburn,* 133 Ohio St. 192, 12 N.E.2d 471 (1938), it was said:

> "As used in the statute the word 'culpable' would seem to imply such neglect as may be ascribed to the party prosecuting the claim and not to something over which he has no control. By 'culpable neglect' a party loses a right through his own carelessness rather than through the fault of another. It is such neglect as

---

7. 5 N.H.R.S.A. § 556:28.

8. Ohio Gen.Code § 10509–134

9. Iowa permits the late filing of claims against an estate in "peculiar circumstances."

There are numerous cases interpreting that phrase but recital of them would seem to serve no useful purpose.

may be traced to the door of the creditor himself. It is more than a mere single failure to file a claim on time or within the required time. But, if the failure to file is continued for a considerable period, the probate court, in the exercise of its discretion, may find that there has been culpable neglect. It all depends on the circumstances." 12 N.E.2d at 477.

The purpose of the statute is, in the court's words,

". . . to empower the probate court, in the exercise of sound discretion, to soften the rigid requirements of the statutes, where otherwise the creditor might suffer rank injustice through no fault of his own." 12 N.E.2d at 477.

Ultimately, the *Coburn* court upheld the lower court's finding of "culpable neglect" since the evidence showed that the creditor was solely responsible for the delinquent prosecution of his claim.

And in *Home Owners' Loan Corporation v. Doolittle,* 57 Ohio App. 329, 13 N.E.2d 920 (1937), the Ohio Court of Appeals, Cuyahoga County, found an absence of "culpable neglect" where a creditor failed to file its claim in a timely fashion because it was not notified of the debtor's death. The court gave an extremely narrow reading to the term "culpable neglect" and concluded that the statute should be construed in favor of the creditor.

"To defeat a claimant because of neglect in presenting his claim in time, the neglect must be more than ordinary neglect. It must be culpable neglect. We feel the word 'culpable' was placed in this statute for the benefit of the claimant so that a court should not deny claim for reinstatement upon even a finding of mere neglect. 'Culpable' means heedlessness, and in its modification of the word 'neglect' almost amounts to gross neglect. It has the meaning 'censurable or blameworthy conduct.' . . .

"The Legislature clearly intended by section 10509–134, General Code, to open the door for the payment of just debts of decedent when justice and equity require it. The broad discretion of the probate court should be exercised with a view to carrying out the spirit of the statute. This discretion should be exercised toward sustaining the right granted to the creditor rather than to defeat that right." 13 N.E.2d at 922.

It is apparent from the foregoing cases that there are no hard and fast principles governing the interpretation of the term "culpable neglect." The term has received inconsistent treatment over the years, even within the courts of the same jurisdiction.

As has already been noted, this Court has in the past expressed adherence to the more stringent approach to "culpable neglect" espoused in the early Massachusetts cases but has never passed on the question of a late filing induced by a representative of the debtor. We think the injustice and hardship which is present in such circumstances is precisely the evil which the statute is designed to combat. Where, as here, the creditor delays action on his claim at the urging of "one in a position to know the circumstances" (the former special administrator), he ought to have the benefit of the statutory remedy. This is especially so where, as is the case in the instant appeal, the delay is not a lengthy one and the estate remains open at the time the claim is submitted. In such circumstances, it cannot be said that the granting of relief in any way frustrates the purpose of the limitation statute which is to encourage the rapid settlement of estates.

We conclude that there is competent evidence to support the finding of the Justice below.

Accordingly, the entry must be:

Appeal denied.

DELAHANTY, J., sat at argument but did not participate further in the case.

All Justices concurring.