Rockingham,
Feb. 7, 1939. } No. 3038.

KARL P. MITCHELL, *Ex'r. v.* ESTATE OF JOHN W. SMITH *& a.*

*Cooper & Hall,* by brief, for the plaintiff.

*John W. Perkins,* by brief, for certain defendants.

*Batchelder & Wheeler,* by brief, for other defendants.

ALLEN, C. J.   In 1922 the plaintiff's testator, herein termed the creditor, loaned John W. Smith $1,600, taking a note secured by a

mortgage of real estate which "was and is worth substantially less than the amount" of the loan. John borrowed the money to loan to his son Edson for use in the purchase of a home, and Edson gave his father a note with a mortgage on the property he bought as security. Interest was paid regularly for four years on the creditor's loan, and by Edson as a convenience for his father, to whom the creditor sent receipts. In 1927 the father died and his widow was appointed executrix of his will. For that year and three successive years thereafter, Edson continued to send the interest payments to the creditor, who sent receipts to the executrix at Edson's request and with her acceptance. Since 1930 no payments have been made. Early in 1934 the creditor was notified of a tax sale of the property mortgaged to him. Soon afterwards he wrote Edson inquiring what he intended to do about the loan made to his father for him. Edson replied that because of hard times he could do nothing at present but would see the creditor shortly about it. Early in the spring of 1935 the creditor redeemed the property from its sale for taxes. He died a few months later. John's widow died in 1934, and an administrator *de bonis non* has since been appointed on his estate. Since 1930 Edson has paid no interest on the note he gave his father and no part of its principal has ever been paid. He made no reply to a letter of inquiry from the plaintiff written after his appointment as executor. This bill was brought in 1936 or early in 1937.

The normal periods for demanding payment of a claim against a decedent's estate and bringing suit upon it have expired, and the plaintiff relies upon the statute (P. L., c. 302, s. 28) by which the time may be extended "if the court shall be of the opinion that justice and equity require it, and that the claimant is not chargeable with culpable neglect in not bringing his suit within the time limited by law," no judgment to affect "any payments or compromises made before the beginning of the proceedings." The trial court has found that the creditor was not chargeable with culpable neglect in proceeding with his claim within the normal periods or subsequently in letting the claim run, and the finding is attacked on the ground of insufficient evidence to support it. It is to be sustained if it was warranted by the subsidiary findings and by proper inferences from the evidence consistent with the subsidiary findings. *LaMarre* v. *LaMarre*, 84 N. H. 553, and cases cited.

The culpable neglect in the prosecution of a claim, as contemplated by the statute, is a faulty one, regardless of effect to delay the expeditious settlement of estates as a general policy of the law. The pro-

vision in the statute that distributions and compromises made before the claim is prosecuted shall not be affected, results in satisfaction of the claim only from such part of the estate as then remains unsettled. Delay in the settlement of the estate prior to suit upon the claim is not ascribable to the claimant. It follows that even although the estate would not be sooner settled, the claim is barred unless freedom from culpable neglect is proved.

Culpable neglect has been defined to be that which is censorious, faulty or blamable. *Emerson's Sons* v. *Cloutman*, 88 N. H. 59, 62. It signifies a lack of due diligence. If no good reason, according to the standards of ordinary conduct, for the dormancy of the claim is found, the claim must be disallowed, although otherwise "justice and equity" sustain it. But if such reason is found, culpable neglect as a presumptive bar has been disproved.

In further definement, under a similar statute in Maine, the meaning of "culpable neglect" has been interpreted to this effect: "It is less than gross carelessness, but more than the failure to use ordinary care, it is a culpable want of watchfulness and diligence, the unreasonable inattention and inactivity of 'creditors who slumber on their rights'. It is the policy of the law to insure the speedy administration and distribution of estates of deceased persons." *Holway* v. *Ames*, 100 Me. 208. In Massachusetts, where there is also a practically identical statute, the court has said: "It is not easy to give a precise definition of the phrase 'culpable neglect', as used in the statute; or to lay down a fixed rule of interpretation which may serve as a test of all cases arising under it. 'Culpable' means not only 'criminal' but 'censurable'; and when the term is applied to the omission by a person to preserve the means of enforcing his own rights, 'censurable' is more nearly an equivalent. As he has merely lost a right of action which he might voluntarily relinquish, and has wronged nobody but himself, 'culpable neglect' would seem to convey the idea of neglect for which he was 'to blame'; that is, the neglect which exists where the loss can fairly be ascribed to his own carelessness, improvidence or folly." *Waltham Bank* v. *Wright*, 90 Mass. 121, 122.

Considering the special findings and deducible findings consistent therewith under this test, the creditor could not be found free from faulty neglect if no more appeared than that with knowledge of the borrower's death and of the appointment of the executrix of the borrower's will, he took no action against the estate for eight years. But an adequate reason for his non-action might be found from the evidence that he thought his claim was amply secured by the mort-

gage. This evidence was received subject to exception, but it was competent as it bore directly on the issue of culpable neglect. It tended to explain why he did nothing in enforcing his rights against the estate. It related to his state of mind, and "when a party's state of mind relates directly to the issues of a case, his statements and conduct are admissible if they help to show what his state of mind was. Wig. Ev., ss. 1714, 1731." *Caplan* v. *Caplan*, 83 N. H. 318, 324.

But the defendants say that if the claimant thought his security sufficient, the conclusion is that he had no intention to make any claim against the estate and therefore waived his rights to enforce its liability. Nevertheless, if his belief in the value of his security was a mistaken one, and his mistake was not attributable to his fault, such a waiver is not a required finding. His intention not to hold the estate liable might be found to be conditional and dependent upon the correctness of his belief that he was otherwise protected. A mistake of fact not due to the party's own fault may overcome the presumption of culpable neglect. *Emerson's Sons* v. *Cloutman*, *supra*, 62.

It is a reasonable inference that the creditor made his loan as an investment to run indefinitely, and, possessing the ordinary business intelligence of a man of his profession, sought adequate security for it. He was not shown to have examined the property or to have made inquiries from disinterested sources about its value. He had been the borrower's family physician for many years. It was fairly to be found that the borrower sought the loan, and it is not regarded as conjectural to infer that he gave the creditor to understand that the property fully protected the loan, or that the creditor was free from fault in relying upon the borrower's statements.

It is not a necessary conclusion that the creditor was at fault in failing to take immediate action when he finally learned the actual value of the security. The arrangement of long standing by which the borrower's son had paid the interest on the creditor's loan would naturally lead the latter to expect the son to indemnify the borrower's estate, and the son's statement that "because of hard times he was unable to do anything at present, but would soon call upon the creditor" might well be found a proper inducement for the creditor to delay action. If the son had made an honest statement in disaffirmance of responsibility, immediate action by the creditor might have been demanded. And although no interest was paid during a period of three years prior to the creditor's notice of the tax sale of the mortgaged property, the neglect of the creditor to proceed

against the estate was not necessarily culpable. A finding of his continued belief in the adequate value of the security until the notice of the tax sale would be proper and might properly be viewed as a reasonable excuse for delay.

The defendants' motion to dismiss the bill also presents the question whether "justice and equity" required the allowance of the claim, even if the creditor was not chargeable with culpable neglect. The statute by its terms creates an equitable remedy. The original statute (Laws 1872, c. 7, s. 2) enacted that the proceeding should be by "bill in equity," and the change of wording to "petition," as the statute now reads, is merely verbal (Comm'rs Rep., P. S., 1890, c. 190, s. 27). The construction that "equitable relief is given by statute by excepting certain cases out of the statute of limitations" (*Powers* v. *Holt*, 62 N. H. 625, 627), is therefore applicable to the statute in its present form. A statute of identical phraseology in Massachusetts was first held to require some recognized principle of equity jurisprudence, to support the allowance of the claim, in addition to freedom from culpable neglect. *Wells* v. *Child*, 12 Allen, 333. But the view appears later to have been modified. "Its operation is not limited to cases where the failure to sue seasonably was due to such fraud, accident, or mistake as would be a ground for equitable relief if there were no statute." *Ewing* v. *King*, 169 Mass. 97, 102, affirmed in *Farrington* v. *Miller*, 225 Mass. 535, 537. It is concluded that a meritorious claim may be allowed against the unsettled part of an estate if the delay is not due to the claimant's fault and has not unduly affected the estate's defence against the claim.

The plaintiff's theory of a right of subrogation arising from the use of the money loaned has no principle of equity to support it. While "The right of subrogation does not rest upon contract or privity, but depends upon principles of natural justice and equity" (*Philbrick* v. *Shaw*, 61 N. H. 356, 357), yet "The doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another, without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own. Sheld., Sub., s. 240." *Contoocook &c. Precinct* v. *Hopkinton*, 71 N. H. 574, 578. The basic defect in the plaintiff's theory is that the creditor had no rights other than those of a general creditor in respect to the son's debt to the borrower. He had no duty or protective interest to discharge the debt. He had no right to an assignment from the borrower when the son's debt

was incurred, and no subsequent occurrence created the right. The plaintiff seeks the additional security of an asset acquired by the borrower with the money loaned him by the creditor. No agreement being made to furnish the security, no trust upon the asset for the creditor's benefit was impressed. The borrower held it free and clear of any special rights of the creditor. Since the foundation for invoking subrogation fails, the plaintiff's position has no merit of equitable justice.

In all the cases cited by the plaintiff, the third party was under obligation to the plaintiff. In *Keene &c. Bank* v. *Herrick*, 62 N. H. 174, the third party was an accommodation signer of a note, and security given him to protect him was held available for payment of the note. In *Hunt* v. *Association*, 68 N. H. 305, and *Sanders* v. *Insurance Co.*, 72 N. H. 485, the principal debtor in each case had an indemnity contract from the defendant, the liability upon which inured to the creditor's benefit. In *Toner* v. *Long*, 79 N. H. 458, the liability of a surety on a bond extended in equity to one who by contract with the principal obligor discharged a part of the latter's obligation to the obligee. Here the son assumed no liability either as surety or as indemnitor for his father's liability to the creditor.

The plaintiff's contention that he is entitled to relief under the doctrine of unjust enrichment must be decided adversely to him. *American University* v. *Forbes*, 88 N. H. 17, 19-21.

The court has found that none of the defendants have acted fraudulently. The son's mortgage to his father remains undischarged, and although the note appears to have been lost, the debt remains unpaid. The son has so testified in his deposition. It therefore remains as an asset of the borrower's estate, which is unsettled in respect to it. The estate appears otherwise to have been fully settled. In this standing of the case, it is the duty of the present representatives of the borrower's estate to undertake to collect the son's debt through foreclosure of the mortgage securing it or by other effective steps. So far as the proceeds of the collection are available, they should be applied to satisfy the plaintiff's claim, with allowance or adjustment for such value as the property mortgaged may have in partial satisfaction. Only the plaintiff and the present representative of the estate remain proper parties to the bill, which should be dismissed as to all others.

*Case discharged.*

All concurred.