Merrimack
No. 87-438

BRENDA STEWART & a.

v.

JOAN K. FARREL,
EXECUTRIX OF THE ESTATE OF ROBERT E. FARREL

March 6, 1989

*Seufert & Thompson P.C.*, of Concord (*Robert L. Thompson* and *Christopher J. Seufert* on the brief, and *Mr. Thompson* orally), for the plaintiffs.

*Branch & Greenhalge P.A.*, of Concord (*Robert D. Branch* on the brief and orally), for the defendant.

JOHNSON, J. The plaintiffs, Brenda and Mark Stewart (the Stewarts), appeal a decision by the Superior Court (*Cann*, J.) denying their petition, pursuant to RSA 556:28, to extend the time for filing notice of claim against the Estate of Robert E. Farrel (the estate) with the defendant executrix, Joan K. Farrel. The Stewarts argue that, because justice and equity required an extension and their failure to file timely was not the result of culpable neglect, the superior court erred in refusing to grant their petition. For reasons that follow, we reverse and remand.

Robert E. Farrel, a resident of Sugar Hill, died in Concord on July 22, 1986. His wife, Joan K. Farrel, was appointed executrix of his estate in October 1986. On September 4, 1987, the Stewarts filed a two-count libel against the estate in Merrimack County Superior Court, alleging that on or about December 29, 1984, while Mr. Farrel was a patient at the New Hampshire State Hospital in Concord, he physically assaulted Mrs. Stewart, who was then a nurse at the hospital. Count I sought recovery for, *inter alia*, Mrs. Stewart's physical injuries, pain and suffering, and loss of employment. Count II was Mr. Stewart's claim for loss of consortium.

Although the Stewarts brought suit against the estate within one year of the executrix's original grant of administration, as RSA 556:5 requires, they did not provide the executrix notice of claim within six months as RSA 556:3 requires. In mid-September 1987, they therefore filed a petition in the superior court, pursuant to RSA 556:28, requesting an extension of time in which to provide the necessary notice. In addition to the above facts, the Stewarts' petition stated that: (1) the only notice of administration of the estate was published during October 1986 in the Littleton Courier, a weekly newspaper published in Littleton; (2) Concord, where they live, is outside the paper's distribution area; (3) they have no contacts in the Littleton area; and (4) they had no actual knowledge of Mr. Farrel's death and the administration of his estate until counsel, whom they retained on September 2, 1987, contacted the State's probate courts and discovered Mr. Farrel had died. The petition also stated that, as a result of her injuries, Mrs. Stewart had been unable to work since the incident.

After receiving their petition and hearing offers of proof of the facts alleged, the superior court determined that the Stewarts were chargeable with culpable neglect because it was "clear that from the date of the injury in December 1984 until September 1987 neither Robert E. Ferrel [sic], his guardian nor the executrix of his estate had any notice whatsoever of any claims which plaintiffs were making." The superior court denied the Stewarts' petition for an extension. This appeal followed.

Like most States, New Hampshire has a creditor non-claim statute establishing filing deadlines for claims against an estate. RSA ch. 556; *see* Falender, *Notice to Creditors in Estate Proceedings: What Process is Due?*, 63 N.C. L. REV. 659, 667–68 (1985). Our statute contains both short and long-term filing provisions, the former tied to administration of the estate, RSA 556:1–:5, and the latter to the date of the decedent's death, RSA 556:29. The short-

term provisions, relevant here, require creditors to file notice of claim with the estate's executor or administrator within six months of the original grant of administration. RSA 556:2, :3. Creditors then must bring suit within one year of the grant of administration, RSA 556:5, but may not bring suit within the first six months. RSA 556:1. Suits against an estate may be sustained only if notice of claim is properly exhibited. RSA 556:1. RSA 556:28 provides the only exception to these requirements. It allows those who fail to bring suit within the allotted time to petition the superior court for an extension. Petitions must set forth all facts necessary to the court's decision. *Emerson's Sons v. Cloutman*, 88 N.H. 59, 62, 184 A. 609, 611 (1936). The superior court may grant the extension if it is "of the opinion that justice and equity require it, and that the claimant is not chargeable with culpable neglect in not bringing his suit within the time limited by law. . . ." RSA 556:28. We have held that the provisions of RSA 556:28 apply to the failure to provide timely notice of claim as well as to the failure to bring timely suit. *Id.* at 61, 184 A. at 610.

On appeal, the Stewarts argue that the superior court erred as a matter of law in refusing to grant them an extension under RSA 556:28. They maintain their failure to provide notice of claim was due entirely to their ignorance of Mr. Farrel's death, and this ignorance was in no way the result of culpable neglect. They add that it would be in the interest of justice and equity to allow their petition, since we have recognized the importance of protecting plaintiffs' rights to maintain actions in tort. Finally, they argue that the superior court erred in refusing to allow an evidentiary hearing on their petition. The executrix argues that the Stewarts failed to allege facts in their petition sufficient to prove the absence of culpable neglect and that, since the statute requires petitions to set forth all relevant facts, the superior court properly denied the Stewarts the opportunity to present additional facts at an evidentiary hearing.

 As noted above, in order to receive relief under RSA 556:28, a plaintiff must submit a petition to the superior court setting forth facts sufficient to demonstrate both that "justice and equity" require an extension and that delay was not the result of the plaintiff's own "culpable neglect." RSA 556:28. Whether justice and equity do require an extension in a particular case and whether the plaintiff was chargeable with culpable neglect are questions of fact for the superior court. *See, e.g., Sullivan v. Bank*, 99 N.H. 226, 228, 108 A.2d 553, 555 (1954); *Emerson's Sons*, 88 N.H. at 62, 184 A. at 611. In determining what justice and equity require, the

superior court should take into account both that " 'the right to recover for personal injuries is . . . an important substantive right,' " *Coffey v. Bresnahan*, 127 N.H. 687, 693, 506 A.2d 310, 314 (1986) (quoting *Carson v. Maurer*, 120 N.H. 925, 931–32, 424 A.2d 825, 830 (1980)), and that the purpose underlying relevant sections of RSA chapter 556 "is to secure the speedy settlement of estates," *Coffey supra.* In interpreting the term "culpable neglect," we have stated:

> "It is less than gross carelessness, but more than the failure to use ordinary care, it is culpable want of watchfulness and diligence, the unreasonable inattention and inactivity of 'creditors who slumber on their rights.' " "It exists 'if no good reason, according to the standards of ordinary conduct, for the dormancy of the claim is found.' "

*Coffey*, 127 N.H. at 693, 506 A.2d at 314.

■ Given our prior interpretation of the term, the superior court's determination that the Stewarts were chargeable with culpable neglect in allowing approximately two and one-half years to pass between the alleged attack and the time they filed suit was error, since a plaintiff who has been injured through tortious conduct is under no duty to notify the tortfeasor of her intention to bring suit within the time allowed by the statute of limitations. The very purpose of RSA 556:28 is to allow certain claims despite a party's failure to meet other statutory requirements. Untimely notice of a tort claim was not itself a factor for the court to consider in determining culpable neglect. The applicable statute of limitations for claims in tort was six years, RSA 508:4, and claimants were not thereby required to provide notice of their claims to anyone during the statutory period. Moreover, the Stewarts' decision not to sue immediately is understandable. It is not unusual for plaintiffs to wait to bring claims until they can determine the full extent of their injuries.

The superior court's error typically would warrant remand for its consideration of relevant facts alleged in the Stewarts' petition. However, petitions for relief pursuant to RSA 556:28 must set forth facts demonstrating not only the absence of culpable neglect, but that justice and equity demand an extension. Although the superior court did not reach the question, it is clear the plaintiffs' petition did not allege facts sufficient to support a determination that justice and equity required relief.

As noted earlier, in determining what justice and equity require in cases such as this, the superior court should consider both the plaintiff's important substantive right to pursue recovery in tort and the interest in speedy settlement of estates underlying RSA chapter 556. *Coffey*, 127 N.H. at 693, 506 A.2d at 314. The Stewarts' petition alleged Mrs. Stewart had been badly injured and was unable to return to work, thus suggesting that she had a viable claim in tort. However, it was devoid of facts relevant to the interest in swiftly settling estates. It did not state whether the estate had closed, whether there was insurance available to cover claims, or any other fact from which the court might have ascertained the effect of late filing on settlement of the estate. *See id.* Whether the estate had closed and whether insurance was available are not the only facts relevant in determining the effect of late filing, nor are they necessary as a matter of law to this determination. However, the failure to present any facts bearing on one of the dual concerns relevant in determining what justice and equity require rendered the Stewarts' petition inadequate. Although the superior court could have permitted the Stewarts to amend their petition or present additional facts at the hearing, *see, e.g., Vanni v. Cloutier*, 100 N.H. 272, 275–76, 124 A.2d 204, 207–08 (1956); *Sullivan v. Bank*, 99 N.H. at 229, 108 A.2d at 555–56, the decision to limit the hearing to offers of proof in support of facts already alleged was within its sound discretion.

This determination, however, does not end our review. After the superior court's decision and our acceptance of the notice of appeal in this case, the United States Supreme Court decided *Tulsa Professional Collection Services v. Pope*, 108 S. Ct. 1340 (1988), holding that, under certain circumstances, the due process clause of the United States Constitution requires known or reasonably ascertainable estate creditors to be provided actual notice of the deadline by which they must file claims with the personal representative. The plaintiffs requested and were granted permission to cite this decision as additional authority in support of their argument.

We typically do not consider issues on appeal unless the parties have raised them first in the trial court. *See, e.g., Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983). We usually insist that the trial court be given an opportunity to address and rule on issues before they are presented to this court, *see Weldy v. Town of Kingston*, 128 N.H. 325, 335, 514 A.2d 1257, 1263 (1986), and that we receive the benefit of a complete record,

*see Appeal of Bosselait*, 130 N.H. 604, 607, 547 A.2d 682, 686 (1988), and full briefing and argument, *see Daboul supra*. In this way we insure that our docket is not burdened with claims that could have been disposed of below, our limited time and resources are not overtaxed by the need for extensive original research, and our decision is reached only after we have considered all relevant facts and the strongest arguments presented on each side.

In this case the Stewarts have made clear both here and in the superior court that it is lack of notice that entitles them to an extension. Indeed, they claim to have suffered from the very inadequacy underlying the United States Supreme Court's decision in *Tulsa*. Because they did not know Mr. Farrel had died, they failed to file notice of claim with the executrix and were therefore deprived of their cause of action.

■ Because the constitutionality of the publication notice provisions in non-claim statutes has long been taken for granted, *see* Falender, 63 N.C. L. REV. at 660–63, and the Supreme Court did not decide the issue until one month after the hearing in this case, there is reason to excuse the Stewarts' failure to raise the constitutional issue explicitly before the trial court. *Cf. Hodgdon v. Weeks Mem. Hosp.*, 128 N.H. 366, 369, 515 A.2d 1199, 1201 (1986) (counsel's failure to anticipate decision on constitutionality was not neglect warranting denial of new trial). Because they have sought to raise that claim during the pendency of their original action, they should be allowed the opportunity on remand to move to amend their pleadings accordingly, and to proceed in accordance with the trial court's ruling thereon.

In *Tulsa*, the United States Supreme Court found the short-term provisions of an Oklahoma non-claim statute to violate the due process clause of the Federal Constitution insofar as they failed to require that "actual notice" of the time for filing claims against an estate be provided to "known or reasonably ascertainable creditors." *Tulsa*, 108 S. Ct. at 1347. The Oklahoma statute required estate creditors to present contractual claims to the executor within two months of the date on which publication notice of the executor's appointment was first given. OKLA. STAT. tit. 58, §§ 331, 333 (1981). The only method of creditor notice for which the statute provided was publication "in some newspaper in [the] county once each week for two (2) consecutive weeks." *Id.* at § 331. The statute required executors to provide such notice immediately upon appointment and generally barred creditor claims not filed within the two-month period. OKLA. STAT. tit. 58, at §§ 331, 333.

In addressing the constitutional adequacy of the statute's notice provisions, the Supreme Court noted that the interest in question, the creditor's cause of action against the estate for an unpaid bill, was clearly property protected by the fourteenth amendment from deprivation through State action without "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Tulsa, supra* at 1344 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Court then examined the Oklahoma non-claim statute in the context of Oklahoma probate practice. Unlike a self-executing statute of limitations, the Court determined, operation of the non-claim statute involved significant State action.

> "The probate court is intimately involved throughout, and without that involvement the time bar is never activated. The nonclaim statute becomes operative only after probate proceedings have been commenced in state court. The court must appoint the executor or executrix before notice, which triggers the time bar, can be given. Only after this court appointment is made does the statute provide for any notice; § 331 directs the executor or executrix to publish notice 'immediately' after appointment. Indeed, in this case, the District Court reinforced the statutory command with an order expressly requiring appellee to 'immediately give notice to creditors.' The form of the order indicates that such orders are routine. Finally, copies of the notice and an affidavit of publication must be filed with the court. It is only after all of these actions take place that the time period begins to run, and in every one of these actions, the court is intimately involved. This involvement is so pervasive and substantial that it must be considered state action subject to the restrictions of the Fourteenth Amendment."

*Tulsa*, 108 S. Ct. at 1345–46 (citations omitted).

Finally, the Court found, the statute, which barred untimely claims, clearly had an adverse effect on relevant interests. After weighing the creditor's interest in recovery against the State's interest in the speedy settlement of estates, it held that known or reasonably ascertainable creditors, whose claims are not merely "conjectural," are entitled to actual notice of the necessary time for filing a claim with the personal representative. *Tulsa, supra* at 1347.

The short-term provisions of our own statute, which we have already described in some detail, do not differ significantly from those of the Oklahoma statute. Our six-month period for providing notice of claim is somewhat longer than the two-month period for filing claims under the Oklahoma statute. Nevertheless, failure to meet our requirement effectively bars the claim, and the time provided falls within the one-to-six-month range typical of short-term provisions, rather than the one-to-five-year period typical of long-term provisions, which the Supreme Court specifically declined to address. *Tulsa*, 108 S. Ct. at 1346. Moreover, New Hampshire's involvement in the events triggering the time period is at least as intimate as was Oklahoma's. Not only must our probate court appoint the estate's executor or administrator, RSA 547:8, but notice requirements are fulfilled not by the personal representative, as was the case in Oklahoma, but by the register of probate, a State employee. RSA 550:10. Thus, our courts are intimately involved in all of those actions necessary to commence the relevant time period, and in the deprivation of a protected property interest after no more than publication notice to the affected party.

If on remand the trial court allows an amendment to raise a *Tulsa* claim, the trial court must in the first instance determine if *Tulsa* is applicable to this tort claim, as opposed to the contract claim in *Tulsa*, and whether the Stewarts were entitled to actual notice as opposed to the publication notice given. The trial court should determine whether the Stewarts were known or reasonably ascertainable creditors whose claim against the estate was more than "conjectural." *Tulsa, supra* at 1347. Because we cannot determine these matters on the record before us, we remand this case. In reaching its decision the court should consider whether the executrix could have discovered, by reasonable diligence, both the Stewarts' names and address and the fact that they had a cause of action against the decedent. Factors relevant to this determination would include, but not be limited to, whether the executrix had actual knowledge of her husband's alleged attack on Mrs. Stewart, whether the executrix had reason to believe her husband might have been involved in this or some similar attack while a patient at the State Hospital, and whether, if she knew such an attack had or might have occurred, she could have obtained Mrs. Stewart's name and address and some information regarding the extent of her injuries from the State Hospital or elsewhere through reasonably diligent efforts.

*Reversed and remanded.*

All concurred.