Grafton
No. 88-100

HAZEL E. CASS

v.

GEORGE T. RAY, JR.,
EXECUTOR OF THE ESTATE OF CLARENCE L. ESTY

April 7, 1989

*Hall, Morse, Gallagher & Anderson,* of Concord (*Charles P. Bauer* on the brief and orally), for the plaintiff.

*Upton, Sanders & Smith,* of Concord (*Ernest T. Smith, III,* on the brief and orally), for the defendant.

JOHNSON, J. The defendant, Attorney George Ray, executor of the Estate of Clarence L. Esty (the estate), appeals a decision by the Superior Court (*Groff,* J.) granting the plaintiff, Hazel Cass (Mrs. Cass), an extension of time in which to file suit against the estate. We hold that the superior court erred in granting Mrs. Cass an extension under RSA 556:28 and therefore reverse and remand.

In 1975, following his wife's death, Clarence Esty, then 82, asked Mrs. Cass, a 71-year-old widow and long-time friend to Mr. Esty and his wife, to stay with him at his home in Hebron. From 1975 until his death in February 1986, Mrs. Cass lived with Mr. Esty in Hebron as his housekeeper and companion. She cooked for him, cleaned his clothes and house, paid his bills, and arranged for medical care when he needed it. At the hearing on her petition to extend time, Mrs. Cass testified that, after she had spent a year as his housekeeper and companion, Mr. Esty promised to leave her a life estate in the Hebron home and sufficient money to care for her during her lifetime if she would continue in that position. She then sold the mobile home in Exeter where she had previously lived.

Mr. Esty died testate on February 12, 1986. On February 24, 1986, the Grafton County Probate Court appointed Attorney Ray executor of the estate. Mr. Esty's will provided Mrs. Cass $10,000 in cash and the right to use the Hebron home and its furnishings during her lifetime, with the stipulation that she pay taxes, insurance, and upkeep while she resided there.

Unhappy with this bequest, Mrs. Cass consulted her former counsel (a member of a firm other than the one she now retains), who agreed to represent her in an action against the estate. On March 27, 1986, this attorney filed notice of claim and demand with the executor pursuant to RSA 556:3. However, he did not file suit against the estate until June 1, 1987, more than three months after the one-year deadline established by RSA 556:5. On June 22, 1987, former counsel's firm therefore filed a petition pursuant to RSA 556:28 to extend the time in which to bring suit. The petition alleged that the reason for late filing was Mrs. Cass' inability to travel during the winter. At a subsequent evidentiary hearing, however, Mrs. Cass, repesented by present counsel, stated that she traveled when her attorneys needed her. Her former counsel testified that suit was not filed within the required time because his office had "failed to get [the case] on an appropriate tickler system." Attributing all responsibility to his firm, he himself conceded that the failure to file timely suit constituted what he deemed to be "culpable neglect." The superior court nevertheless granted the petition for late filing. This appeal followed.

We recently detailed the requirements of RSA chapter 556 in *Stewart v. Farrel*, 131 N.H. 458, 461–62, 554 A.2d 1286, 1288 (1989). As we noted there, estate creditors must file notice of claim and demand with an estate's executor or administrator within six months of the grant of administration, RSA 556:3, and must file suit against the estate within the following six months. RSA 556:1, :5. Creditors who fail to meet either of these deadlines may petition the superior court for an extension pursuant to RSA 556:28. *Emerson's Sons v. Cloutman*, 88 N.H. 59, 61, 184 A. 609, 610 (1936). Petitions must set forth facts sufficient to show that justice and equity require the requested extension and that failure to file timely notice or suit was not the result of culpable neglect. RSA 556:28; *see Emerson's Sons, supra* at 62, 609 A. at 611.

In this case, the superior court found that justice and equity required an extension since there was only a three-month delay in filing suit. The court further determined that Mrs. Cass' former counsel was guilty of "simple," rather than "culpable," neglect in failing to file timely suit. Finally, it held that, even if her former counsel was guilty of culpable neglect, this neglect was not attributable to Mrs. Cass.

On appeal, the executor contends that Mrs. Cass failed to show lack of culpable neglect. He argues that: (1) she and her former counsel agreed at the hearing that the reason for delay was not her inability to travel during the winter, but a "slip-up" in his office;

(2) this indicates a "lack of due diligence" on the part of former counsel and brings the reason for failure to file suit within the definition of culpable neglect; and (3) culpable neglect on the part of her attorney, while acting within the scope of his employment, is attributable to Mrs. Cass.

Mrs. Cass responds that the evidence supports the superior court's factual findings with regard to both "justice and equity" and "culpable neglect" and that, in any case, RSA 556:28 specifically looks to the culpable neglect of the claimant alone, and not to that of her attorney. Furthermore, she argues, RSA chapter 556 cannot constitutionally be applied to deprive her of her claim against the estate because it fails to provide actual notice of filing deadlines to reasonably ascertainable creditors and because its requirements are expressed in a way so convoluted that creditors of ordinary intelligence cannot understand them.

For purposes of RSA 556:28, we have long defined culpable neglect as follows:

> """It is less than gross carelessness, but more than the failure to use ordinary care, it is a culpable want of watchfulness and diligence, the unreasonable inattention and inactivity of 'creditors who slumber on their rights.'""
> It exists '[i]f no good reason, according to the standards of ordinary conduct, for the dormancy of the claim is found.'"

*Coffey v. Bresnahan*, 127 N.H. 687, 693, 506 A.2d 310, 314 (1986) (citations omitted). In describing what constitutes "good reason, according to the standards of ordinary conduct, for the dormancy of the claim," we have further stated that ""culpable neglect" would seem to convey the idea of neglect for which [the claimant] was "to blame"; that is, the neglect which exists where the loss can fairly be ascribed to his own carelessness, improvidence or folly.'" *Mitchell v. Smith*, 90 N.H. 36, 38, 4 A.2d 355, 358 (1939) (quoting *Waltham Bank v. Wright*, 90 Mass. 121, 122 (1864)). Whether conduct in a particular case constitutes culpable neglect is a question of fact for the trial court. *See, e.g., Sullivan v. Bank*, 99 N.H. 226, 228, 108 A.2d 553, 555 (1954); *Emerson's Sons*, 88 N.H. at 62, 184 A. at 611. Like other findings of fact, a finding as to culpable neglect can be set aside on appeal only if it is unsupported by the evidence or erroneous as a matter of law. *E.g., Concord Steam Corp. v. City of Concord*, 128 N.H. 724, 727, 519 A.2d 266, 269 (1986).

In this case, the determination that former counsel's actions did not rise to the level of culpable neglect was clearly against the weight of the evidence. Mrs. Cass bore the burden of demonstrating lack of culpable neglect. *See* RSA 556:28. Yet the only evidence regarding the reason for late filing was former counsel's undisputed testimony that he and his firm failed properly to implement office procedures, an error that he himself conceded to be neglectful. There was no evidence of a mistake of law or fact or some circumstance beyond the plaintiff's or her counsel's control of the kind we usually understand to provide good reason for the dormancy of a claim. *Cf. Coffey, supra* at 693–94, 506 A.2d at 314 (plaintiff's failure to discover cause of action due to doctor's silence supported finding of no culpable neglect); *Vanni v. Cloutier*, 100 N.H. 272, 275, 124 A.2d 204, 207 (1956) (finding of no culpable neglect justified where plaintiffs' belief that administratrix would not require demand was based on discussions with insurance agent); *Mitchell, supra* at 39–40, 4 A.2d at 358–59 (creditor's mistaken belief that his claim was secured by mortgage was adequate to support finding of no culpable neglect). Thus the evidence required the conclusion that failure to bring timely suit was the consequence of the carelessness of former counsel or his firm, and that it was therefore the result of culpable neglect as we have defined it.

The superior court further erred as a matter of law in interpreting RSA 556:28 to speak only to the culpable neglect of the claimant, and not to that of her attorney. Although we have not specifically so held with respect to RSA 556:28, it is well established that a client may not generally have relief from the consequences of an attorney's negligent failure to meet deadlines and other procedural requirements. *See, e.g., Brady v. Duran*, 117 N.H. 275, 277, 372 A.2d 283, 284–85 (1977); *Dumas v. Hartford &c. Ind. Co.*, 94 N.H. 484, 491, 56 A.2d 57, 61–62 (1947). That RSA 556:28 is phrased in terms of neglect chargeable to the claimant is without consequence, since we recognize that counsel's actions and omissions within the scope of his authority are in essence actions and omissions of his client. 7 AM. JUR.2d *Attorneys at Law* § 139 (1980); *cf. Halstead v. Murray*, 130 N.H. 560, 565–66, 547 A.2d 202, 205 (1988) (liberal rule regarding enforcement of settlement agreements made by counsel based on special relationship between attorney and client). Absent a clear indication that the legislature intended to distinguish between client and attorney in this peculiar instance, it would be unreasonable to interpret RSA 556:28 as adopting a different standard. We disagree, moreover, with the

superior court's citation to *Koziell v. Fairbanks*, 115 N.H. 679, 348 A.2d 358 (1975) as support for its conclusion that we do not impute counsel's culpable neglect to the client. We refused to attribute the attorney's negligence to his client in *Koziell* because there the superior court could have found that the attorney had ceased to act for the client, *id.* at 681, 348 A.2d at 359; this clearly was not the situation here.

Finally, although we have recently recognized that the notice provisions applicable to RSA 556:28 may be constitutionally inadequate, *see Stewart v. Farrel*, 131 N.H. at 466, 554 A.2d at 1291, neither the notice concerns recently discussed nor the claim that the statute's requirements are somehow unclear has any relevance to this case. Both Mrs. Cass and former counsel were well aware that Mr. Esty had died and Mr. Ray had been appointed executor. Moreover, there is no allegation that untimely suit was the result of the inability of Mrs. Cass or her former counsel to understand statutory requirements. Late filing was the result of nothing more or less than the acting attorney's culpable neglect.

█ We therefore reverse and remand to the superior court for action consistent with our decision.

*Reversed and remanded.*

All concurred.