Rockingham County Probate Court
No. 2008-849
Rockingham
No. 2008-919

IN RE WILL AND ESTATE OF DAVID J. BOURASSA

Argued: May 14, 2009
Opinion Issued: October 30, 2009

*Coughlin, Rainboth, Murphy & Lown, P.A.*, of Portsmouth (*Kenneth D. Murphy* on the brief and orally), for Desiree Bourassa & a.

*Michael E. Chubrich P.A.*, of Portsmouth (*Michael E. Chubrich* on the brief and orally), for Deborah Beck.

BRODERICK, C.J. This is a consolidated appeal from the Superior Court (*McHugh*, J.) and the Rockingham County Probate Court (*Hurd*, J.). Deborah Beck, the fiancée of decedent David Bourassa, appeals an order of the probate court granting Desiree Bourassa's petition for extension of time to file suit against her father's estate, and an order of the superior court awarding the proceeds of the decedent's life insurance policy to his five daughters. We reverse.

The record supports the following facts. The decedent, David Bourassa, and his wife, Toni Lynn Bourassa, were divorced in 1996. The divorce decree contained a provision requiring the parties to maintain "any and all life insurance policies" and to "designate a trustee to receive the proceeds of any such policies for the benefit of the children." At that time, David Bourassa was insured under a life insurance policy issued in 1992 by Alexander Hamilton Life Insurance Company in the principal amount of $150,000. The policy listed Toni Lynn Bourassa as the primary beneficiary and the "children of insured" as the contingent beneficiaries. In 1992, the couple had four minor children, Danielle, Devin, Dayna and Desiree.

In February 1999, David Bourassa changed the primary beneficiary under the life insurance policy from Toni Lynn Bourassa to Deborah Beck, and the contingent beneficiaries from his four children to his brother, Gary Bourassa. In October 2000, David Bourassa executed his will, bequeathing all of his property to his four children in equal shares. In February 2002, he and Beck had a child, Katherine Bourassa.

On August 16, 2006, David Bourassa died in a motor vehicle accident. On August 18 his will was allowed and letters testamentary were issued by the

probate court. On September 26 the executor notified David Bourassa's four eldest daughters, three of whom had reached majority, that Beck was the sole beneficiary of the life insurance policy. In early December, the parties began negotiating a settlement of the estate including entitlement of the life insurance proceeds. The negotiations continued sporadically until March 12, 2007, but no agreement was reached.

On September 24, 2007, over thirteen months after the grant of administration of David Bourassa's estate, the four eldest daughters brought suit in superior court against the estate, seeking to recover "the amount of the life insurance policy proceeds that would have been paid to them but for the breach of the obligations by David Bourassa." In May 2008, Beck, having previously been granted leave to intervene, filed a motion to dismiss raising the one-year statute of limitations applicable to claims against estates, see RSA 556:5 (2007). In response, Desiree, for herself only, filed in the probate court a petition, after the fact, for extension of time to file suit in superior court. In her petition, Desiree explained that an extension was necessary because the superior court action had been "filed approximately one month after the time required." In late June, the superior court denied Beck's motion to dismiss. In late September 2008, the probate court granted Desiree's request for an extension of time.

A bench trial was held in superior court in October. The court ruled that because the action regarding the proceeds of the insurance policy was not a claim against the estate, the statute of limitations was four years and, thus, the claims of the four eldest daughters were not time-barred. The court also ruled that the term "children," as used in the divorce decree, meant "offspring" and therefore the term did not refer only to the decedent's minor children. As to the language in the divorce decree regarding life insurance, the court found that the life insurance policy was under the control of the superior court because it had granted the divorce, and David Bourassa had the ongoing obligation to maintain the policy for the benefit of his children. The court ruled that he had no authority to change the beneficiaries; therefore, the 1999 change, which named Beck as the primary beneficiary, was void. The court further ruled that because David had a child with Beck born before he died but after he had obtained the life insurance policy, that child was also entitled to recover her proportionate share of the policy proceeds because she was a "child of the insured."

Beck filed a motion for reconsideration, arguing that the trial court had erred as a matter of law in ruling that the one-year statute of limitations in RSA 556:5 did not apply and, because the three eldest daughters never sought permission to extend the one-year statute of limitations, that their action was time-barred. She also argued that it was error to award Desiree

any portion of the life insurance proceeds because her delay in filing suit against the estate within one year was the result of "culpable neglect" under RSA 556:28. The trial court granted Beck's motion to the extent it acknowledged that the one-year statute applied, but refused to reconsider its decision on the merits because "the Probate Court ha[d] authorized this case to be brought in Superior Court and this Court's rational[e] for its decision is sound." This appeal followed.

Beck raises five issues: (1) whether the probate court had subject matter jurisdiction to extend the time to file suit for purposes of RSA 556:28; (2) whether the probate court erred by granting Desiree an extension of time to file suit; (3) whether the probate court denied her due process of law by issuing a *sua sponte* order under RSA 556:28; (4) whether the superior court erroneously interpreted the divorce decree to deny the decedent his right to change his life insurance beneficiaries; and (5) whether the superior court unsustainably exercised its discretion by depriving her of the life insurance proceeds.

■ We note at the outset that Desiree was the only daughter to file a petition for extension of time to file suit against the estate. Because the other sisters failed to request an extension under RSA 556:28, their action was time-barred under RSA 556:5.

Beck first argues that "[b]ecause life insurance proceeds payable to a living person are not probate assets," the probate court lacked subject matter jurisdiction to enter an order under RSA 556:28. Desiree contends that the nature of the claim is one against the estate in the amount of the life insurance policy proceeds because she should have been named as a primary beneficiary under the policy. Therefore, she argues, because the claim is one for money owed and not the actual proceeds of the life insurance policy, the probate court had jurisdiction to grant her an extension of time to bring the claim.

■ RSA 547:3 (Supp. 2008) provides: "The probate court shall have exclusive jurisdiction over . . . [t]he granting of administration and all matters and things of probate jurisdiction relating to the composition, administration, sale, settlement, and final distribution of estates of deceased persons . . . ." A person with a claim against the estate of a deceased person "may apply to the court having subject matter jurisdiction over the nature of the claim" for an extension of time to file suit. RSA 556:28. We agree with Desiree that the "nature of the claim" at issue is a claim against her father's estate for money owed in the amount of the life insurance policy, and that such a claim falls within the exclusive jurisdiction of the probate court pursuant to RSA 547:3. Accordingly, the probate court had

subject matter jurisdiction over the nature of the claim for purposes of the petition for an extension of time to file suit.

■ Beck next argues that the probate court erred by granting Desiree an extension of time to sue under RSA 556:28 because she was chargeable with "culpable neglect." Desiree contends that it was proper and reasonable for the probate court to grant her the extension. RSA 556:5 provides: "No suit shall be maintained against an administrator for any cause of action against the deceased, unless it is begun within one year next after the original grant of administration . . . ." The purpose of this provision "is to secure the orderly and expeditious settlement of estates." *Sullivan v. Marshall*, 93 N.H. 456, 458 (1945). Pursuant to RSA 556:28:

> Whenever any person has a claim against the estate of a deceased person, which has not been prosecuted within the time limited by law, such person may apply to the court having subject matter jurisdiction over the nature of the claim, by petition setting forth all the facts; and if the court shall be of the opinion that justice and equity require it, and that the claimant is not chargeable with culpable neglect in not bringing or prosecuting his or her suit or claim within the time limited by law, it may extend the time for filing and prosecuting the claim to a date certain . . . .

■ A petition for relief pursuant to RSA 556:28 must therefore set forth facts demonstrating not only the absence of culpable neglect, but that justice and equity require an extension. *See Stewart v. Farrel*, 131 N.H. 458, 461 (1989). The burden is on the petitioner to demonstrate lack of culpable neglect. *See Cass v. Ray, Ex'r*, 131 N.H. 550, 554 (1989). "Whether conduct in a particular case constitutes culpable neglect is a question of fact for the trial court." *Id.* at 553. "Like other findings of fact, a finding as to culpable neglect can be set aside on appeal only if it is unsupported by the evidence or erroneous as a matter of law." *Id.*; *see* RSA 567-A:4 (2007) (findings of fact of the probate judge are final unless so plainly erroneous that such findings could not be reasonably made).

■ In interpreting the term "culpable neglect," we have stated that it is "less than gross carelessness, but more than the failure to use ordinary care, it is culpable want of watchfulness and diligence, the unreasonable inattention and inactivity of creditors who slumber on their rights." *Stewart*, 131 N.H. at 462 (quotations omitted). Culpable neglect "exists if no good reason, according to the standards of ordinary conduct, for the dormancy of the claim is found." *Id.* (quotations omitted). "[W]e have further stated that 'culpable neglect' would seem to convey the idea of neglect for which the claimant was 'to blame'; that is, the neglect which

exists where the loss can fairly be ascribed to his own carelessness, improvidence or folly." *Ray*, 131 N.H. at 553 (quotations and brackets omitted).

Desiree's petition for extension of time alleged that, at the time of the appointment of the administrator in August 2006, she was a minor and remained a minor during the one-year period during which suit was to be filed, that timely notice of her claim was given to the administrator, that the parties were attempting to resolve the matter, and that a mediation was held in February 2007 to accomplish a settlement. An affidavit in support of the petition, prepared by Desiree's sister, Devin, states that in October 2006, the parties agreed that Beck and the five daughters would each be entitled to a one-sixth share of the estate, and that the daughters would get the life insurance proceeds. The affidavit further states that in December 2006, the parties traveled together to Disney World, "reinforcing that everything would be okay and that [Beck] still was not planning on . . . claiming the insurance money."

 However, despite the fact that Desiree was only seventeen years old when the administrator of her father's estate was appointed in August 2006, she was represented by counsel by November of that year, nine months before the statute of limitations expired. She offers no reason why her attorney failed to file suit before the expiration of the statute of limitations. *See id.* at 554 (client may not generally have relief from the consequences of an attorney's failure to meet deadlines and other procedural requirements). She also offers no reason why her minority would toll the statute under these circumstances. *See Steir v. Girl Scouts of the U.S.A.*, 150 N.H. 212, 214-15 (2003) (statutes of limitations apply against minors unless statute expressly provides otherwise). In addition, although the parties attempted to reach agreement informally among themselves and by mediation, those attempts had broken down by early March 2007. Thus, from March 2007, five months before the statute of limitations expired, Desiree was aware that Beck claimed sole ownership of the life insurance proceeds. She failed, however, to bring a claim against her father's estate in a timely fashion. Indeed, Desiree did not file a petition for extension of time until May 27, 2008, a full fourteen months after attempts to reach agreement had failed, and a full nine months after the statute of limitations had expired.

 "There was no evidence of a mistake of law or fact or some circumstance beyond the plaintiff's or her counsel's control of the kind we usually understand to provide good reason for the dormancy of a claim." *Ray*, 131 N.H. at 554. If there is no good reason, according to the standards of ordinary conduct, for the dormancy of the claim, it must be disallowed,

although otherwise "justice and equity" sustain it. *In re Estate of Bennett*, 149 N.H. 496, 498 (2003). We hold that under the facts and circumstances of this case Desiree failed to sustain her burden of demonstrating lack of "culpable neglect" in failing to file a petition for extension of time to bring a claim against her father's estate until nine months after the expiration of the one-year statute of limitations set forth in RSA 556:5. We conclude, therefore, that the probate court's order granting an extension to file suit in superior court pursuant to RSA 556:28 must be set aside as not supported by sufficient evidence. *Cf. id.* at 499. Accordingly, we reverse both the probate and superior courts' orders, and need not address Beck's remaining arguments.

*Reversed.*

DALIANIS, DUGGAN and HICKS, JJ., concurred.