# IN THE MATTER OF THE ESTATE OF: EARL L. SMALL, JR., Deceased

S. Ct. Civil No. 2010-0096

Supreme Court of the Virgin Islands

September 17, 2012

417

E. GEOFFREY WOLFE, ESQ., Rohn & Carpenter, LLC, St. Croix, USVI, *Attorney for Appellants*.

ROBERT A. WALDMAN, ESQ., Hamm Law Firm, St. Croix, USVI, *Attorney for Appellee*.

HODGE, Chief Justice; *CABRET*, Associate Justice; and *SWAN*, Associate Justice.

## OPINION OF THE COURT

(September 17, 2012)

CABRET, *Associate Justice*. Mikey Kalloo and Harry Dipchan (collectively "Appellants") allege that in November 2006, they were

injured in a car accident caused by Earl L. Small, Jr., who allegedly struck the Appellants' vehicle while driving intoxicated. The Appellants filed suit for damages, seeking an unspecified amount of damages greater than Small's $300,000 policy limit. However, on October 19, 2008, while the suit was pending, Small died in a helicopter accident in New York. The Appellants never filed their claim against Small's estate, because they allege that the executrix of the estate failed to provide them notice that the estate had been formed. After final distribution of the estate's assets by the Magistrate Division of the Virgin Islands Superior Court, the Appellants moved the magistrate to set aside the distribution until their claim could be finalized. Although the magistrate initially set aside the final distribution, after a motion to reconsider, the magistrate reaffirmed his final distribution finding that the Appellants were provided adequate notice. The Appellants appealed to the Appellate Division of the Superior Court, which affirmed the magistrate and found that the Appellants were not due actual notice of the commencement of probate proceedings, and even if they were, that they had been provided adequate notice. In their appeal to this Court, the Appellants argue that the Superior Court erred in these determinations. For the reasons that follow, we affirm the Superior Court's order.

## I. FACTS AND PROCEDURAL HISTORY

On January 19, 2007, the Appellants, represented by Lee Rohn, Esq., filed a lawsuit against Small, represented by Douglas Capdeville, Esq., seeking personal injury damages because of a car accident occurring on St. Croix in November 2006. In their complaint, the Appellants alleged that Small, while intoxicated, crossed onto the wrong side of the road and collided with their vehicle. They also alleged that Small was cited and arrested due to the collision. After the personal injury suit had been served on Small, he died in an October 19, 2008 helicopter accident while in New York. On November 7, 2008, Attorney Capdeville sent a letter to Attorney Rohn informing her of his client's death. Rohn replied in a subsequent letter that she wanted "the information as to where the probate was filed and the case number so we can record this matter against the estate." (J.A. 45.)

On December 2, 2008, Rhonda Small, Small's widow, filed a petition to admit Small's will to probate. Small's estate was, and is, represented by Robert A. Waldman, Esq. Rhonda Small became the executrix of the

estate. Rhonda Small published notices of the commencement of probate proceedings for the benefit of creditors in the local newspaper, the *St. Croix Avis*, four times over four weeks from January 25, 2009 until February 15, 2009.[1] She again published a notice of the final accounting in the *St. Croix Avis* four times over four weeks from October 23, 2009 until November 13, 2009.[2] No objections were filed pursuant to either set of notices. On December 18, 2009, the magistrate issued an Adjudication and Decree of Distribution finalizing the distribution of the estate's assets.

On January 5, 2010, in response to some ongoing discovery forwarded to Attorney Capdeville by Attorney Rohn in the Appellants' personal injury action against Small, Attorney Capdeville mailed a letter to Attorney Rohn in which he stated: "I have to ask why you are sending these bills to me . . . where the defendant is deceased, and where you have made no efforts to file a creditors [sic] claim in the Probate matter which I understand is almost concluded." (J.A. 82.) On January 13, 2010, the Appellants, apparently energized by Attorney Capdeville's letter, filed a motion to set aside the final distribution, which the magistrate granted on January 28, 2010. On February 10, 2010, the estate filed a motion to reconsider, which the Appellants opposed on March 1, 2010.

In the opposition to the estate's motion to reconsider, the Appellants argued that they were due actual individualized notice of the commencement of the proceedings to settle the estate based on *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988) and that the estate failed to provide such notice. In support of the Appellants' argument that they never received actual notice, Attorney Rohn alleged that at some point contemporaneous with the commencement of probate proceedings or immediately thereafter, she contacted the attorney for the estate, Attorney Waldman, to determine whether an estate had been formed and to get the case number for the estate. However, she failed to reach Attorney Waldman and left him a message, requesting that he provide her with the probate case number. Attorney Rohn did not explain to the magistrate how she knew

---

[1] *See* 15 V.I.C. § 391 (requiring an estate to publish public notice of the appointment of the executor and the time limit to make claims against the estate four times over four consecutive weeks in a newspaper in the territory).

[2] *See* 15 V.I.C. § 564(a) (requiring publication in the same manner as section 391 for the final accounting of the estate).

of Attorney Waldman's involvement with Small's estate or how she knew to call him for the information. Attorney Waldman, in his affidavit attached to the estate's motion to reconsider, alleged that he returned Attorney Rohn's call the same day and gave the information to Attorney Rohn's secretary. Attorney Rohn, again in the opposition to the motion to reconsider, denied receiving the message with the information.

On June 8, 2010, the magistrate granted the estate's motion to reconsider and permitted the December 18, 2009 final distribution to go ahead. The magistrate determined that it was "moot" whether or not *Tulsa* applied, because, even if *Tulsa* did apply, he determined that the Appellants had actual notice and failed to file an objection. The magistrate based this determination on Attorney Rohn's acknowledgement of Small's death in her correspondence with Attorney Capdeville and on her unexplained knowledge of and contact with the estate's attorney.

On June 18, 2010, the Appellants filed a notice of appeal to the Superior Court. On November 10, 2010, the Superior Court affirmed the magistrate. The court first determined that *Tulsa* did not apply and thus the Appellants were not due actual notice, but also affirmed the magistrate's factual determination that the Appellants had actual notice and thus would have fulfilled the notice requirements of *Tulsa* in any event. On November 19, 2010, the Appellants filed a timely notice of appeal to this Court. *See* V.I. S. CT. R. 5(a).

## II. JURISDICTION AND STANDARDS OF REVIEW

■ We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." In *H & H Avionics, Inc. v. V.I. Port Authority*, 52 V.I. 458 (V.I. 2009), we determined that a magistrate's order can normally only be considered a final order after it has been appealed to the Virgin Islands Superior Court and ruled on. *Id.* at 461. Here, because the Superior Court has affirmed an order that " 'end[ed] the litigation on the merits and le[ft] nothing for the court to do but execute the judgment,' " *id.* (quoting *Estate of George v. George*, 50 V.I. 268, 274 (V.I. 2008)), the order is final and we have jurisdiction to consider it.

Generally, we review factual findings from the finder of fact for clear error and exercise plenary review over legal conclusions. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

## III. DISCUSSION

In their appeal, Appellants argue that they were due actual notice of the commencement of probate proceedings by the executrix and that they did not receive actual notice. The Superior Court found that the Appellants were not due actual notice, but that they had received actual notice nonetheless. We begin our discussion by deciding first what notice was due to the Appellants, and then turn to their contention that the magistrate committed clear error by determining that they received actual notice.

### A. What form of notice were the Appellants entitled to?

Appellants first argue that they should have received individual actual notice of both the death of Small and the commencement of probate proceedings, based on the Due Process Clause of the Fourteenth Amendment, so that they could file a timely claim against the estate. The magistrate determined that it was "moot" whether they had any right to actual notice, because he found that the Appellants had been given actual notice of both the death and the commencement of probate proceedings. The Superior Court addressed the issue directly and found that the Appellants were not entitled to individualized actual notice.

The law of notice for creditors of estates draws from two distinct bodies of law in the Virgin Islands. Section 391 of title 15 of the Virgin Islands Code mandates that the executrix of an estate must provide published notice to the public of the death of the decedent and the appointment of an executrix for the estate in a newspaper, once a week, for four consecutive weeks. The same section also mandates that the executrix place public notices in three different public places, including at the post office closest to the decedent's place of residence at the time of his death. *See* 15 V.I.C. § 391. The purpose of the notice is to require "all persons having claims against the estate to present them, with proper vouchers, within six months from the date of the notice, to the executor or administrator . . . ." *Id.* A creditor may even make a claim against the estate after the six month time for making claims has passed, but is subject to penalties in the priority of payment by the estate. *See* 15 V.I.C. § 392. However, once the administration of the estate is complete, the creditor's claim, at least as it exists against the estate, is extinguished. *See id. See also* 15 V.I.C. §§ 641-51 (permitting suits against heirs, legatees, next of kin, and devisees of the estate after distribution in certain

situations to cover the debts of the estate). In this case, the Appellants concede that the estate fulfilled the statutory requirement that it publish public notice.

██ However, the Appellants argue that the estate failed to provide the notice required by the Due Process Clause of the Fourteenth Amendment. In *Tulsa*, the United States Supreme Court stated that when an individual has "an unsecured claim, a cause of action against the estate" then "[l]ittle doubt remains that such an intangible interest is property protected by the Fourteenth Amendment." 485 U.S. at 485. The Court then weighed the creditor's interest in being provided notice, noting that

> Creditors, who have a strong interest in maintaining the integrity of their relationship with their debtors, are particularly unlikely to benefit from publication notice. As a class, creditors may not be aware of a debtor's death or of the institution of probate proceedings. Moreover, the executor or executrix will often be, as is the case here, a party with a beneficial interest in the estate. This could diminish an executor's or executrix's inclination to call attention to the potential expiration of a creditor's claim.

*Id.* at 489. The Court then compared the creditor's interest to the interests of the state in prompt adjudication of probate proceedings, stating that

> At the same time, the State undeniably has a legitimate interest in the expeditious resolution of probate proceedings. Death transforms the decedent's legal relationships and a State could reasonably conclude that swift settlement of estates is so important that it calls for very short time deadlines for filing claims. As noted, the almost uniform practice is to establish such short deadlines, and to provide only publication notice.

*Id.* (citations omitted). Finally, the Court reasoned that an executrix of an estate is required to provide "actual notice to known or reasonably ascertainable creditors." *Id.* However, an executrix is only required to use " 'reasonably diligent efforts' " to identify reasonably ascertainable creditors and is only required to give notice to those creditors whose claims are not merely " 'conjectural.' " *Id.* at 490, 491 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983) and

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S. Ct. 652, 94 L. Ed. 865 (1950)); *see also In re Thomson McKinnon Sec. Inc.*, 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991) (applying the *Tulsa* standard in bankruptcy proceedings and noting that actual notice is not required for those creditors "whose identity or claims are not reasonably ascertainable *and* those creditors who hold only conceivable, conjectural or speculative claims.") (emphasis added).

No party contests that the estate knew or could have known of the Appellants' identities and of their potential claims. We are aware that the executrix of the estate was the decedent's spouse, and it is likely that he informed his wife that he was being sued for more than $300,000 in a personal injury suit. However, regardless of whether Small ever informed his wife about the ongoing lawsuit, the estate certainly had knowledge of both the identities of the Appellants and their claims no later than February 10, 2009, as Attorney Capdeville wrote a letter to Attorney Waldman to request that he receive all of the probate filings so that he could remain informed concerning the progress of Small's estate. In that letter, Attorney Capdeville included both the name and caption number for the Appellants' claims against Small.

■ However, the parties, and the Superior Court, split over how "conjectural" the claims were.[3] The Superior Court considered that a personal injury action that had been filed, but not reduced to judgment,

_____

[3] Appellants urge that the "conjectural" prong is the same as the identity prong — that a claim is no longer "conjectural" once an estate's knowledge of the identity of the claimants and the existence of the claims is established. Most cases that have reviewed this issue consider the identification issues and the conjectural nature of the claims separately. *See, e.g., In re Trump Taj Mahal Assocs.*, Civ. A. No. 93-3571 (JEI), 1993 U.S. Dist. LEXIS 17827 (D.N.J. 1993) (collecting federal bankruptcy cases that apply *Tulsa*); *Stewart v. Farrel*, 131 N.H. 458, 554 A.2d 1286, 1291 (1989). In addition, the pertinent language of *Tulsa* states that "For creditors who are not 'reasonably ascertainable,' publication notice can suffice. *Nor* is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice. Here, as in *Mullane*, it is reasonable to dispense with actual notice to those with mere 'conjectural' claims." 485 U.S. at 490 (emphasis added). By the use of the negative disjunctive, "nor," the Court signaled that determining "conjectural claims" is a different issue than determining whether creditors are "reasonably ascertainable." *See id.* This conclusion is buttressed by *Mullane*, which is referenced in *Tulsa* for this point. *Mullane* states, in the context of a trust: "Nor do we consider it unreasonable for the State to dispense with more certain notice to those beneficiaries whose interests are *either* conjectural *or* future *or*, although they could be discovered upon investigation, do not in due course of business come to [the] knowledge of the common trustee." *Mullane*, 339 U.S. at 317 (emphasis added). Again, by use of

which requested an unspecified amount of damages running into the hundreds of thousands of dollars was too conjectural to qualify for actual notice under *Tulsa*. The Florida courts, which are the only courts we have found to have attempted to place a standard on what "conjectural" claims may be, have defined a "conjectural" claim as one where " 'the liability depends on some future event, which may or may not happen, . . . render[ing] it uncertain whether there ever will be a liability.' " *Foster v. Cianci*, 773 So. 2d 1181, 1181 (Fla. Ct. App. 2000) (quoting *Spohr v. Berryman*, 589 So. 2d 225, 227 (Fla. 1991)). Here, the only future events standing between the Appellants' claims and liability are judicial findings that have yet to happen in the Superior Court in the personal injury action. Unfortunately, the Florida courts provide no further guidance as to whether these kinds of future events are the kind which function to dispense with the requirement of actual notice — two different Florida courts have arrived at completely opposite answers to that question without any helpful analysis. *Compare Foster*, 773 So. 2d at 1182 (personal injury claims that have not been fully adjudicated are not conjectural); *with U.S. Trust Co. of Florida Sav. Bank v. Haig*, 694 So. 2d 769, 771 (Fla. Ct. App. 1997) (guaranty claimant must prove that defect fell within guaranty before the claim is not contingent, in other words, claimant must prove his case on the merits before the claim is not conjectural). *See also In re Trump Taj Mahal Assocs.*, 1993 U.S. Dist. LEXIS 17827 (personal injury claim not yet filed with a court is conjectural); *In re Estate of Novakovich*, 2004 WY 158, 101 P.3d 931, 938 n.5 (Wyo. 2004) (relying on *Foster* to hold that "[a] personal injury claim is not a contingent claim any more than any number of other disputed creditor claims against an estate.").

We do find guidance, however, in the facts and language of *Tulsa* itself. In *Tulsa*, like in this case, the executrix of the estate was the surviving spouse of the decedent. *Tulsa*, 485 U.S. at 482. The late-filed claim in that case was for the medical bills of the decedent for his final hospital stay. *Id*. The Court described those bills as "a cause of action against the estate" which had not yet been filed in any court, but remained an "intangible interest . . . protected by the Fourteenth Amendment" and required that the claimant receive actual notice. *Id*. at 485-86. Although the hospital's bills

the disjunctive either/or, the Court signaled that a claimant is not due actual notice when either the claim is conjectural or the claimant's identity is unknown to the estate.

had a specific dollar amount attached to them, they had not been subjected to any judicial scrutiny to validate the amounts or charges shown. In other words, the hospital informed the decedent, and his widow, that they had a claim against the decedent — that he owed the hospital money because he utilized the services of the hospital — and that the claim was worth the amount shown on the hospital bills. No judicial officer, however, had determined whether the bills themselves were valid or if the amount claimed was the correct amount. Despite the lack of judicial scrutiny, the Supreme Court declined to find the cause of action memorialized by the hospital bills to be "conjectural."

■ Here, the facts are very similar. The Appellants filed their causes of action nearly two years before Small's death in the Superior Court of the Virgin Islands. Accordingly, the Appellants informed Small that they claimed he owed them money because of damages they had incurred based on his negligence. Also, just like in *Tulsa*, no judicial officer had, at the time of Small's death, determined whether the claim was valid or if the amount the claim sought in damages was the correct amount. We discern no practical difference in the "conjectural" nature of that cause of action and the personal injury claim in the present case.

In light of the foregoing, we hold that, based on the Due Process Clause of the Fourteenth Amendment, the Appellants were due actual notice of the commencement of proceedings to settle the estate. Published notice alone would have been insufficient to protect their rights. With that conclusion in mind, we turn next to the magistrate's factual determination, affirmed by the Superior Court, that the Appellants were provided actual notice.

### B. Did the Appellants have actual notice?

In their second argument, Appellants assert that the factual finding that they had actual notice of the existence of the estate was clearly erroneous. Throughout their argument, however, they rely extensively, indeed nearly exclusively, on an affidavit from Attorney Rohn which was first attached to the notice of appeal to the Superior Court. That affidavit was not before the magistrate when he made his findings. Therefore, before we can conduct a careful review of the record to determine if the factual finding of actual notice was clear error, we must determine whether Attorney Rohn's affidavit can be considered part of the record.

## 1. Because the magistrate is the finder of fact in proceedings under 4 V.I.C. § 123(a)(4), Attorney Rohn's affidavit is new evidence that was not before the fact finder and will not be considered on appeal.

■ Attorney Rohn's affidavit, first provided by the Appellants attached to their notice of appeal to the Superior Court, provides, for the first time, some evidence as to why or how Attorney Rohn knew the identity of Attorney Waldman and contacted him about the estate of Small, yet still claimed to be unaware of the existence of the estate. In the affidavit, she stated that she "was informed by Doug Capdeville that Attorney Waldman 'might' be the attorney for the Estate," which explained why she was aware of Attorney Waldman's identity yet unaware of the existence of the estate. Normally, an appellate court does not take additional evidence, but instead restricts itself to the evidence on the record before the finder of fact. *But see* FED. R. EVID. 201 (permitting an appellate court to take judicial notice of facts "not subject to reasonable dispute."). Therefore, if the magistrate was the finder of fact in this case and the Superior Court was functioning as an intermediate appellate court which does not accept new evidence, then we must reject Attorney Rohn's affidavit and restrict ourselves to the record before the magistrate at the time he made his findings.

■■ We have yet to address who the "finder of fact" is in the context of a probate decision that came from the Magistrate Division of the Superior Court under section 123(a)(4). 4 V.I.C. § 123 (a)(4) ("Each magistrate may . . . hear all . . . probate matters."). Our decision in *H & H Avionics, Inc.* holds that a magistrate's decision may not be directly appealed to this Court because it is not a final order of the Superior Court. *H & H Avionics, Inc.*, 52 V.I. at 461. We left open the question of whether the Legislature delegated the fact finding portion of adjudications that go before magistrates to an entity incapable of issuing a final order.[4] Based on the following authorities, we are convinced that the Legislature did

---

[4] In *H & H Avionics, Inc.*, we recognized an exception to the general rule that a magistrate may not issue a final order appealable to this Court — a final adjudicatory order from a magistrate on a case which he has jurisdiction over due to 4 V.I.C. § 123(d), which permits a magistrate to "conduct all proceedings in a jury or non-jury civil matter" with the consent of the parties and the Presiding Judge of the Superior Court, is a final order directly appealable to this Court. 52 V.I. at 462 n.3.

intend that a magistrate presiding over a probate matter would function as the finder of fact, subject to review by the Superior Court sitting as a first appellate court.

■■ Under section 123(a), the Legislature provided the Magistrate Division the original jurisdiction to hear certain kinds of cases without the oversight of a Superior Court judge. *See* 4 V.I.C. § 123(a) (including, among other things, traffic offenses, petty criminal offenses, small claims civil matters, landlord and tenant cases, and probate matters). Under section 123(b)(1), the Legislature provided the magistrates with the authority to hear and determine certain pretrial matters in any other case if designated to do so by the sitting Superior Court judge.[5] Any factual determinations made upon designation pursuant to section 123(b)(1) are reviewed under the same general standard under which we review the Superior Court's factual findings in our cases on appeal — clear error. Therefore, because a magistrate's factual findings are reviewed only for clear error, a reasonable reading of the statute suggests that the

---

[5] Section 123's organization closely mirrors the federal statute's organization setting out a federal magistrate's authority. *See* 28 U.S.C. § 636. Like in section 123, subsection (a) of 28 U.S.C. § 636 sets out those cases a magistrate may hear in their entirety, subsection (b)(1)(A) (like subsection (b)(1) of the local enactment) deals with pretrial matters designated to the magistrates for a binding decision from the sitting trial judges, subsection (b)(1)(B) (like subsection (b)(2) of section 123) authorizes trial judges to refer certain other matters to magistrates to conduct a hearing or issue non-binding recommendations, and subsection (c) of the federal statute (like subsection (d) of the Virgin Islands statute) provides the requirements for a civil matter to be heard by a magistrate by consent. *Compare* 4 V.I.C. § 123 *with* 28 U.S.C. § 636. Normally, as this Court did in *H & H Avionics, Inc.*, we would turn to the federal courts' interpretation of section 636(a) for persuasive authority on our interpretation as to whether the magistrate or the Superior Court functions as finder of fact for the purposes of section 123(a) adjudications. Unfortunately, however, the federal magistrates' authority under section 636(a) is considerably more restrained than the authority granted to Virgin Islands magistrates under section 123(a) — under section 636(a), a federal magistrate only has the authority to hear petty criminal offenses, other misdemeanors by consent, and to provide certain pretrial criminal determinations and non-binding recommendations. The federal courts, however — like the Superior Court — have established the clear error standard of review for factual findings issued in those petty criminal offenses in which a magistrate possesses original jurisdiction. See FED. R. CRIM. P. 58(g)(2); *see also United States v. Evans*, 581 F.3d 333, 338 n.4 (6th Cir. 2009) ("[T]he district court judge is required to apply the same standard of review to the magistrate judge's decision as this court would apply to a decision that originated from a district court judge."); *United States v. Peck*, 545 F.2d 962, 964 (5th Cir. 1977) ("Review by the district court of a conviction before the magistrate is not a trial *de novo* but is the same as review by a court of appeals of a decision by a district court.").

Legislature delegated the fact finding authority to the magistrate, at least in the context of pretrial issues designated to the magistrates. We find it unlikely that the Legislature would have given the magistrate the ability to issue binding factual findings, subject only to the normal clearly erroneous review, in designated cases under section 123(b)(1) but restricted the ability to do so when a magistrate hears a probate case without the oversight of a judge pursuant to section 123(a)(4).

Although not binding upon us, we find it persuasive that the Superior Court, in the amendment to its rules promulgated on November 23, 2010, interpreted the Legislature's intent the same way. *See* SUPER. CT. R. 322.3(a) ("In all reviews from magistrate decisions, the trial judge shall review the record as developed before the magistrate . . . . No additional evidence shall be taken or considered."); SUPER. CT. R. 322.3(b)(1) ("Factual determinations are to be reviewed for clear error."). Furthermore, we note that Alaska, which has a similar statute setting out the authority of its magistrates, treats them as the finders of fact in cases in which they have original jurisdiction. *See Kinsman v. State*, 496 P.2d 63, 65 (Alaska 1972) (requiring the trial court to limit its review to the record before the magistrate unless, based on a statutory provision that the Virgin Islands has no mirror provision for, the trial court decides a full new trial is necessary).

██ In conclusion, we hold that the magistrate is the finder of fact for all section 123(a)(4) original jurisdiction cases. A contrary rule allowing a party to create or submit additional factual materials to affect disposition of the appeal to the Superior Court would undermine the integrity of the magistrate fact-finding process and would be unfair; it would deprive a magistrate of information needed for an informed decision in light of all of the evidence and would invite either inefficient or inadequate preparation for magistrate proceedings, or worse, strategic "sand bagging" (since the opponent of the "new evidence" is not given an opportunity to rebut the additional material in the evidentiary proceedings before the magistrate). Therefore, we restrict our discussion of the magistrate's determination that the Appellants had actual notice to those

materials that were before the magistrate when he made his ruling and reject consideration of Attorney Rohn's affidavit.[6]

### 2. The finding that the Appellants had actual notice was not clearly erroneous.

■ Having rejected consideration of the affidavit, we turn next to reviewing whether the Superior Court erred in holding that the magistrate's determination that the Appellants had actual notice of the commencement of probate proceedings was not clearly erroneous.[7] Clear error is a very deferential standard; an appellate court should only reverse a factual determination as being clearly erroneous if it is " 'completely devoid of minimum evidentiary support or . . . bears no rational relationship to the supportive evidentiary data.' " *Rainey v. Hermon*, 55 V.I. 875, 880 (V.I. 2011) (quoting *Hodge v. McGowan*, 50 V.I. 296, 316 (V.I. 2008)). Having reviewed the magistrate's order and the record, we agree with the Superior Court that the magistrate did not commit clear error in his determination of actual notice.

■ To show that the opposing party received actual notice, a party is not required to prove that any particular form, such as personal service by a process server or service by mail, was used. *See Tulsa*, 485 U.S. at 491 (permitting actual notice to be given by " 'mail or other means as certain to ensure actual notice.' ") (quoting *Mennonite*, 462 U.S. at 800). In the present context, the critical issue under *Tulsa* is whether or not the claimants had actual knowledge of the creation and pendency of the estate, not the form the notice took. *See In re Estate of Sheridan*, 117 P.3d

---

[6] We note that the Superior Court, although it did not directly address this issue, made no mention of Attorney Rohn's affidavit nor the explanation the affidavit tendered for the first time on appeal. Therefore, it appears that the Superior Court, although it did not do so explicitly, correctly rejected the affidavit and decided the case on the evidence that was before the magistrate.

[7] In the early part of his opinion, the magistrate characterizes the Appellants' knowledge of the commencement of probate proceedings as "constructive" rather than actual. (J.A 101.) However, when addressing the *Tulsa* requirements directly, the magistrate stated: "However, this Court finds the concerns of [*Tulsa*] are moot given that this Court finds that counsel for the Plaintiffs had notice being contemporaneously aware of 1) the death of the decedent, and 2) knowing the identity of the Counsel representing the estate of the decedent." (J.A. 102.) Despite his use of the word "constructive," both parties and the Superior Court accept, and argue from the premise, that the magistrate found actual notice. Based on the language of his findings, we agree and assume that the use of the word "constructive" was inadvertent.

39, 41 (Colo. Ct. App. 2004) (holding that, despite a lack of any formal notice, *Tulsa* requirement was satisfied by a showing that, because the creditor was also the executor of the estate, the creditor had actual notice of the pendency of the estate proceedings).

■■■ The magistrate rested his determination that Attorney Rohn had actual knowledge of the pendency of the proceedings on two facts: (1) Attorney Rohn had actual notice of the death of Small through her correspondence with Attorney Capdeville and (2) Attorney Rohn contacted Attorney Waldman to discuss the estate with no explanation of how she knew that Attorney Waldman was involved with Small or his estate. Both of these facts are admitted by the Appellants. The conclusion that Attorney Rohn therefore knew about the commencement of probate proceedings bears a rational relationship to the fact that Attorney Rohn admittedly knew of Attorney Waldman's involvement with Small and his estate and contacted him about it. Because there was factual support in the record for the magistrate's determination, the Superior Court correctly determined that the magistrate did not commit clear error in finding that Attorney Rohn demonstrated that she had actual knowledge of the estate proceedings when she contacted Attorney Waldman, the attorney for Small's estate, to discuss the claims her clients had against Small.[8]

Therefore, we affirm the Superior Court's finding that the magistrate did not clearly err in his factual determination that Attorney Rohn had actual notice of the commencement of probate proceedings.

## IV. CONCLUSION

Contrary to the determination of the Superior Court, the Appellants were entitled to actual notice of the commencement of probate

---

[8] There is additional evidence in the record that supports the magistrate's determination. The estate provided the magistrate with Attorney Waldman's sworn affidavit that he called Attorney Rohn's office and provided her secretary with the requested information. Attorney Rohn denied receiving that information personally, although she did not deny that Attorney Waldman made the phone call. In any event, her claim that she did not receive the message, even if true, does not mean she lacked actual notice. An agent, like an attorney, may receive notice for a principal. *See* RESTATEMENT (THIRD) OF AGENCY § 5.02. A subagent, like a legal secretary, who receives notice can have that notice imputed back to her employer, the attorney, and the principal (the client). *See* RESTATEMENT (THIRD) OF AGENCY §§ 1.04, cmt. h. & 5.02. Therefore, the uncontested sworn testimony of Attorney Waldman provides another independent basis for the magistrate's determination of actual notice.

proceedings under the Due Process Clause of the Fourteenth Amendment, as explained by the United States Supreme Court in the *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988) decision. However, the Superior Court's error is not grounds for reversal, because we affirm its finding that the magistrate did not commit clear error in determining that the Appellants had, in fact, received actual notice. Consequently, we affirm the Superior Court's decision.